## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMILIO L. VOZZOLO, on behalf of himself and all others similarly situated,<br><br>              Plaintiff,<br><br><br>        v.<br><br><br>AIR CANADA,<br><br>              Defendant. | Civil Action No.:  20-3503<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Emilio L. Vozzolo ("Plaintiff"), by his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

### NATURE OF THE ACTION

1.      This is a class action against Air Canada ("Defendant") arising out of their failure to provide full refunds to consumers whose flights were cancelled as a result the COVID-19 virus.

2.      At the time of this Complaint, the COVID-19 virus has spread across the globe, leaving physical, social, and economic devastation in its wake.  Schools, business, and institutions have been ordered to close and stay-at-home orders have been instituted in an effort to slow the spread.

3.      Travel, like many activities once routine, has become severely limited, and in some cases, eliminated.  Federal and local governments have discouraged non-essential travel and

restricted the destinations and times of travel for health safety reasons.  As a result, demand for airline travel has drastically decreased within the United States and abroad.

4.      Defendant responded to the decrease in demand and concern for health safety arising from the COVID-19 virus by reducing its flight schedules and cancelling flights for thousands of passengers.  But rather than refund passengers for the value of their cancelled flights, Defendant is refusing to provide anything other than vouchers for the pre-paid flights, even if the purpose for the trip has ended. In doing so, Defendant breaches its Terms and Conditions which promise that it will refund customers the full value of their ticket, upon request, for flights cancelled by Air Canada, including if the cancellation was "required for safety purposes."

5.      Moreover, Defendant defies recent U.S. Department of Transportation ("DOT") guidelines which issued an "Enforcement Notice" requiring both domestic and foreign airlines to refund tickets for flights cancelled due to Covid-19.  In fact, the DOT's "Enforcement Notice" states that the "longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions)."[1]

6.      Plaintiff is entitled to a full refund for his cancelled Air Canada flight.  Instead, Defendant issued him, and countless other customers, a voucher that will expire if not used within a set period of time.

7.      Defendant has undoubtedly experienced economic hardships as a result of the Covid-19 pandemic and the resulting decrease in demand for air travel.  While Plaintiff and Plaintiff's counsel are not numb to this, they bring this action on behalf of individuals also facing severe hardship who, unlike Defendant, have not been granted staggering government relief and

---

[1] https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020.pdf

whose hard-earned money Defendant is now holding without having provided the flight they booked and contracted.

8.     Indeed, the Canadian government has responded to the economic hardship Defendant, and other Canadian airlines face, by promising a C$82 billion ($56.9 billion) aid package.[2]  In addition to the promised government aid, Defendant will also profit from its unlawful practice of issuing vouchers that are tantamount to interest-free loans rather than refunds for cancelled flights.  Moreover, because a significant percentage of customers are unlikely to redeem their vouchers before the deadline, Defendant will likely reap close to a 100% profit margin on many of the unredeemed pre-paid tickets since it will then keep the airfare consumers paid for without providing anything to them in return.  Defendant is essentially using the pre-paid tickets as interest free loans, and in the case of unredeemed vouchers as a forced grant, demanding that its suffering customers provide it with a second bail-out.

9.     Plaintiff seeks relief individually, and as a class action, on behalf of all consumers in the United States who purchased Air Canada, Air Canada Rouge or Air Canada Express flights scheduled to operate within, from, or to the United States from March 1, 2020 through the date of a class certification order and who were not provided a full refund after Air Canada cancelled the flights.   Plaintiff also seeks relief individually and on behalf of a New York subclass, as defined herein, for Defendant's violation of the New York General Business Law § 349 and New York General Business Law § 350 and for claims of Conversion, Money Had and Received, and for Unjust Enrichment under New York common law.

---

[2] https://www.bloomberg.com/news/articles/2020-03-18/trudeau-said-to-plan-virus-support-worth-1-of-canada-s-economy?sref=ZCCexVBt

## PARTIES

10.     Plaintiff Vozzolo is a resident of Rockland County, New York, the state most heavily affected by COVID-19 in the United States.   On December 30, 2020, Mr. Vozzolo purchased five round-trip tickets from Defendant for the purpose of he and four of his immediate family members traveling from Newark, New Jersey to Vancouver BC, Canada for a family wedding.  The flight was scheduled to depart on April 29, 2020 and return on May 5, 2020.  Mr. Vozzolo paid Defendant $ 1,942.90 for the tickets, including taxes and fees.

11.     On or about March 26, 2020, Plaintiff contacted Defendant through its customer service representative to discuss the COVID-19 impact on travel.  Plaintiff was told that if the rebooked flights were cancelled, he would not receive a refund.  Rather, the only option was to receive a voucher for travel from Defendant that would expire within two years of the date his tickets were purchased.  On or about April 20, 2020, Plaintiff learned that Defendant cancelled his flight.   Additionally, only after Plaintiff booked his flight and after the COVID-19 pandemic became manifest, the Defendant updated its website confirming that only a credit will be offered for cancelled flight.[3]

12.     Unlike its current website, at the time that Mr. Vozzolo purchased his ticket, the Air Canada website represented that "in the event of a flight cancellation or a delay of more than two hours, Air Canada offers you the option of requesting a refund for the unused portion of your ticket or using the unused portion toward future travel . . ."[4]  The tickets are also subject to the Terms and Conditions in effect when the tickets were purchased which states that Defendant "will

---

[3] https://www.aircanada.com/us/en/aco/home/book/travel-news-and-updates/2020/covid-19.html#cancelled-flight
[4] https://web.archive.org/web/20190129111300/https://www.aircanada.com/ca/en/aco/home/fly/flight-information/delayed-flights-and-cancellations/refund-options.html

refund the unused portion of the ticket" when "the passenger experiences a delay of three hours or more, a denial of boarding or cancellation, and refuses alternate travel arrangements . . .due to reasons within Air Canada's control or required for safety purposes." *International Tariff General Rules Application to Transportation of Passengers and Baggage*, (hereinafter "Terms and Conditions) Rule 100 Sec. (D), 104. Exhibit A.

13.    Based on these provisions and statements, Defendant contractually promised and represented that the tickets Mr. Vozzolo purchased would be refunded if Defendant cancelled the flight (including if the cancellation was "required for safety purposes"). Mr. Vozzolo relied on Defendant's promises and representations in deciding to purchase the airline ticket, and these promises and representations were part of the basis of the bargain.  Had Mr. Vozzolo known that Defendant would not honor its promise to refund his ticket if it cancelled his flight (including if the cancellation was "required for safety purposes"), this would have impacted his purchasing decision.  Here, Defendant cancelled Plaintiff's flight arising from the COVID-19 pandemic. Plaintiff seeks a refund because he and his immediate family members do not know when or if they will be able to use a travel voucher.

14.    Defendant Air Canada is Canada's largest domestic and international airline, with its principal place of business in Montreal, Canada.   Defendant advertises and conducts business throughout the United States, including the State of New York.  La Guardia and Newark airport represent two of the Company's largest hubs, serving up to 110 non-stop flights per day (including codeshare flights with their partner United Airlines) to and from seven Canadian cities: Vancouver, Calgary, Toronto, Ottawa, Montreal, Quebec City and Halifax.[5]

---

[5] https://www.aircanada.com/content/aircanada/ca/en/aco/home/about/media/air-canada-usa.html

## JURISDICTION AND VENUE

15.     Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2).   Diversity jurisdiction exists as Plaintiff is a New York resident and Defendant, a foreign corporation, has availed itself of the laws of the State of New York as it has sufficient and numerous contacts with the State of New York within this District.   The Class Plaintiff seeks to certify includes citizens and residents of New York.   The amount in controversy exceeds $5,000,000 for Representative Plaintiff and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiff and the Class, and the profits reaped by Defendant from its transactions with Plaintiff and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the statutory penalties and injunctive and equitable relief sought.

16.     Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of herein occurred and affected persons and entities are located in this judicial district, and Defendant received substantial compensation from such transactions and business activity in this judicial district, including as the result of purchases of the airline tickets from travel agencies herein, and the interstate trade and commerce described herein is and has been carried out in part within this judicial district. Moreover, Plaintiff is a resident of Rockland County, New York and his online purchase of the airline ticket was made within this judicial district.

## FACTS COMMON TO ALL CAUSES OF ACTION

### I.     Air Canada Corporate Background

17.     The inception of Air Canada dates back to 1937 when the Canadian government created Trans-Canada Air Lines (TCA) to provide transcontinental airline services within

Canada's borders.[6]  Originally, TCA was a wholly owned subsidiary of the government-owned Canadian National Railway Corporation.[7]  In 1965, TCA adopted the name Air Canada, and in 1988 the Canadian government approved its privatization, with the completion of its IPO in October 1988.[8]  By July 1989, Air Canada successfully completed its move to privatization after its second issuance of stock.[9]

18.     Throughout the 1990s, Air Canada went through a series of restructuring and obtained entry into the Japanese market while also opening almost 30 new U.S. routes in 1995.[10] In 1997, Air Canada joined Lufthansa, Scandinavian Airlines System, Thai Airways International, and United Airlines to form the Star Alliance, which linked the member airline's routes and honored each other's frequent flyer miles.[11]  By the late 1990s, Air Canada had record profits, with international fares accounting for more than half of passenger revenue.[12]  In July 2000, Air Canada acquired Canadian Airlines, and later merged the regional carries of both into a single entity called Air Canada Jazz.[13]  Shortly thereafter it launched Zip, a low-fare carrier based in Calgary.[14]

19.     Through its membership in the Star Alliance, Air Canada now offers services to 1,300 airports in 195 countries using a fleet of over 300 aircraft.[15] In 2018, it operated an average of 1,550 scheduled flights each day and carried nearly 51 million passengers to nearly 220 destinations on six continents.[16] It is the largest airline and the largest provider of "scheduled

---

[6] https://www.referenceforbusiness.com/history2/35/Air-Canada.html

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] https://www.aircanada.com/content/aircanada/ca/en/aco/home/about/corporate-profile.html
[16] *Id.*

passenger services in the Canadian market, the Canada-Us transborder market and in the international market to and from Canada."[17]

20.     Air Canada has recently experienced a decade of growth.  In February 16, 2020, Air Canada's President and CEO Calin Rovinesco reported it was the top performing stock on the TSX for the past decade, with a 3,575 per cent return.  As of December 31, 2019, Defendant held $5.9 billion in cash, cash equivalents and short-term investments.[18]

## II.     Covid-19 and Air Canada's Cancellations

21.     In January 2020, numerous people were infected with a new virus in Wuhan, China. The virus spread rapidly throughout China, and in some cases fatally, with the World Health Organization ("WHO") reporting the first cases outside China on January 20, 2020 in Japan, South Korea, and Thailand.  The following day, the first confirmed case was reported in the United States in a Washington State resident who had recently returned from a trip to Wuhan.

22.     The WHO soon declared a global health emergency and named the virus Covid-19, as the death toll in China reached 1,113 and confirmed cases worldwide exceeded 45,000.  As the virus spread, countries around the world began to restrict travel to and from their borders.  On January 31, 2020, travel restrictions affecting domestic and international air travel began when the U.S. federal government restricted travel from China.  On February 29, 2020, the U.S. Government issued a "do not travel" warning for areas most impacted by the virus in Italy and South Korea, and banned all travel to Iran. On March 11, 2020, while the WHO declared Covid-10 to be a pandemic, the U.S. Government blocked travel from Europe to the United States.

23.     A few days later, President Trump declared a national emergency as states ordered the closings of schools and non-essential businesses across the United States.   The majority of

---

[17] *Id.*
[18] https://business.financialpost.com/opinion/bob-scott-airline-bailouts-before-passenger-refunds-no-way

U.S. states soon issued stay-at-home directives, urging residents to refrain from all "nonessential" travel. The United States officially became the most severely impacted country, with at least 81,321 confirmed infections and more than 1,000 deaths.[19]

24. As the number of confirmed cases increased, so did the restrictions in travel, resulting in a significant decrease in demand for airline travel. Initially, Defendant responded to the decreased demand by cancelling only selective flights. But on March 18, 2020, Defendant announced that it was cancelling all flights in certain location or on certain schedules until March 31, 2020, at which time the "majority" of its flights would be suspended or cancelled.

25. Defendant canceled over 25% of its flights, including Plaintiff's flight, beginning on March 20, 2020 through May 1, 2020. As a result, thousands of passengers, like Plaintiff, who bought tickets from Defendant are no longer able to use them for the travel they paid for.

26. Defendant is refusing to abide by its contractual and regulatory obligations by forcing customers, like Plaintiff, to accept a non-transferrable voucher which can only be used within a fixed time period. In most cases, this voucher proves useless as customers like Plaintiff purchased their tickets for a specific event or purpose which has passed, and they now no longer have any desire or purpose to travel to the destination for which they booked the ticket, or to any other destination where Defendant operates.

27. Class Members are entitled to a full refund of their tickets pursuant to Defendant's contractual obligations. Air Canada airline tickets are subject to its Terms and Conditions which states that Defendant "will refund the unused portion of the ticket" when "the passenger experiences a delay of three hours or more, a denial of boarding or cancellation, and refuses

---

[19] https://www.nytimes.com/article/coronavirus-timeline.html

alternate travel arrangements . . .due to reasons within Air Canada's control or required for safety purposes." Terms and Conditions, Rule 100 Sec. (D), 104. Exhibit A.

28.   Prior to the Covid-19 outbreak, Defendant's website stated "in the event of a flight cancellation or a delay of more than two hours, Air Canada offers you the option of requesting a refund for the unused portion of your ticket or using the unused portion toward future travel . . ." as represented in the screenshot below stored in the "wayback machine" archives.



29.   *After* Defendant began to cancel flights due to Covid-19 and refuse to provide refunds, it changed the refund policy on its webpage to state, "In the event of a flight cancellation or a delay of more than three hours, ***for situations other than those outside our control***, Air Canada offers you the option of requesting a refund for the unused portion of your ticket, or using the unused portion toward future travel with us. ***Cancellations resulting from the COVID-19 crisis are considered outside our control.***" [20] (emphasis added). This was not its policy at the time

---

[20] https://www.aircanada.com/us/en/aco/home/fly/flight-information/delayed-flights-and-cancellations/refund-options.html

that Plaintiff, and class members, purchased their tickets for travel scheduled from March 30, 2020 and beyond.  By changing the policies on its website, Defendant admits that its prior policy did not exempt it from providing a full refund when Air Canada cancelled a flight. In refusing to provide refunds, and then changing its refund policy, Defendant breached its contractual promises and representations to its customers. Plaintiff and Class members have not received the benefit of their bargain because Defendant failed to perform its contracted obligation to provide the flight they booked and then refused to refund the purchase price.

30.    Defendant promised and represented that it would refund customers for flights it cancelled, and Plaintiff and Class members relied on these representations and contractual promises in deciding to purchase the airline ticket, and these representations and contractual promises were part of the basis of the bargain.  Moreover, the return of the purchase price to Plaintiff and Class members is an alternate remedy where, as here, the contract has been effectively rescinded by Defendant's failure to provide the flight they booked.

31.    Defendant's most recent refund policy is false and misleading in that it represents that Air Canada does not have an obligation to provide refunds for cancelled flights, when in fact it does have a contractual obligation to do so under the policy in affect when Plaintiff and Class Members purchased the relevant tickets.  Rather than refunding "via [the] original point of purchase" after it cancelled numerous flights, as its website and Terms and Conditions promised at the time of purchase, Defendant has, at most, provided only vouchers, some of which expire in a year.  Had Plaintiff known that Air Canada would not honor its promise to refund his ticket if it cancelled his flight, this would have impacted his purchasing decision. The materiality of promising to refund cancelled flights and then refusing to do so is obvious as customers are not

only being refused the services they paid for, they are suffering financial damage due to Defendant's failure to honor its refund claims.

32.     Countless Air Canada consumers have voiced, and continue to voice, complaints over Defendant's unfair and deceptive refund practices. For example, Defendant's Facebook page is rife with wronged customers asking Defendant to correct its unjust conduct and provide them with their promised refunds, as demonstrated below:[21]



---

[21] https://www.facebook.com/pg/aircanada/posts/



👍 Like          💬 Comment          ➦ Share

Most Relevant ▾

**Hayley McBride** Air Canada you cancelled a flight that was due to Canada from the uk on March 26th so I had to pay out of pocket for a one way earlier flight at $700 and you won't refund or compensation according to my claim?! Also please note the original flight was a necessary trip for bereavement and I haven't had the discount for that either as I sent the death certificate and ALL relevant info etc really poorly managed I want someone to message me ASAP

3d

Most Relevant is selected, so some replies may have been filtered out.

**Elaine Cohen** Good Morning Air Canada. I am still waiting to hear from you regarding my cancelled flight. Funny you said it was cancelled in September because of Covid, but you are now charging 5000.00 more for the same day!! Did our Prime Minister not say there would be no gouging? Please get back to me. I am a senior on a fixed income and I need a refund!

1w                                    👍😢😠 9

↳  1 Reply

View 27 more comments                          2 of 49

↳  1 Reply

**Addy Prado** Air Canada, you cancelled my flight on April 4th to Vancouver, and I never received any refund, or at the very least, a credit/voucher. Unfortunately, I only received a credit for one portion of my trip to use by the end of the year, which is basically no time. Very upset.

2d                                         👍 1



**Vince Greece** Cool! Now how about you start refunding all the flights YOU canceled. And no I'm not interested in a "credit" that I won't be able to use once your airline goes bankrupt (which I sincerely hope happens after the way your customer service has treated me through this process).

1w                                                                 55

↳ **38 Replies**



**David Rowland** My flight was cancelled twice. Of course a refund was refused. I finally rebooked with my "voucher". Then AC had changed the routes, which now makes me have 2 stops, and the fares increased so of course I had to pay a difference in fares even thoug... See More

1h



**Eona Ilson** My flight in September was changed from Milan to Munich!!!! The email indicated it was because of the "government advisory". The email also said I would get a refund if this was not satisfactory which of course it was not. I cancelled my airbnb because I thought this meant that Air Canada was not flying to Milan in September. Then I went online to cancel the flight. There was no option on line for a refund only a voucher. I spent over an hour and a half on the phone waiting for a representative only to be told that I cannot have a refund! I CANNOT HAVE A REFUND FOR A TRIP TO MILAN THAT WAS CHANGE TO MUNICH!!!! This should be illegal!!!!

2d                                                                 2

—





**Yukiko Konomi-Girard** What next trip? I haven't even got a response for the message I sent (as per your instruction, Air Canada!) regarding the refund of my canceled flights since March 19!

5h

↳ 1 Reply



**Zack Zakka** I want my money. I didn't purchase a voucher. Give me an thousands of people their money back.

1w                                                                 13

↳ 2 Replies

 **Carly Simpson** Anyone actually had any joy with a refund. Offered me taxes back at a quarter of what I paid! They cancelled the flight which isn't even due until mid July and blaming it on the virus! Absolute joke!

4d

 **Marshall Ma** I bought through a third party app, they refused refund (even credit) when my flight was cancelled. They said because AC's policy they couldn't give my money back. Instead, they switched my direct flight to a connection flight. Mess

1w                                                                  1

 **Pablo Hernández** This is getting ridiculous... Are you deleting my posts? Could someone get back to me? You've been ignoring me for a month now.

14h                                                                 1

 **Stephen Dunsmore** The easiest way is Air Canada's current system whereby you book and pay for flights, Air Canada cancels your flights and steals your money, and you stay home only having had the pleasure of paying!

1w                                                        17

 ↳  2 Replies

 **Joaquim Ferreira** We all need a refund!!! This is a must.

1w

Most Relevant ▾

  **Washvish Singh** But no kindness from Air Canada, and their failure to give refunds for cancelled flights.

1w                                                                 12

 **Chris Legault** Pretty frustrated with Air Canada, we were priced gouged at 4 times the cost of a one way ticket during the pandemic and issued no refund or credit!! We had to fly back to Ottawa from our wedding in New Orleans during the pandemic and we were unable to change our existing flights as the reference code provided by Air Canada was invalid.... $1800 for two people, one way, economy class, when we had existing Air Canada tickets that we couldn't change doesn't seem very ethical! Thanks for nothing #AirCanada

2d

↳ 1 Reply

 **Linda Chin Yee** good work, but there's still an issue of tickets not used because of this crisis and a credit issued instead of a refund. How are the ticket holders going to know when flights resume ? and to what destinations ? and will the ticket cost be same or is there going to be an extra charge ? Or, is AC going to electronically issue a notice to those with banked credits ?

1w                                                                   7

33.     The above customer complaints are only a small sample of complaints voiced within a week before the filing of this Complaint, and do not begin to portray the number of customers who have been wronged by Defendant's conduct.

34.     In response to the increase in airline customer complaints regarding cancelled flights in the wake of Covid-19, on April 3, 2020, the DOT issued the following Enforcement Notice:[22]

> The U.S. Department of Transportation's Office of Aviation Enforcement and Proceedings (Aviation Enforcement Office), a unit within the Office of the General Counsel, is issuing this notice to remind the traveling public, and U.S. and foreign carriers operating at least one aircraft having a seating capacity of 30 or more seats, that passengers should be refunded promptly when their scheduled flights are cancelled or significantly delayed. Airlines have long provided such refunds, including during periods when air travel has been disrupted on a large scale, such as the aftermath of the September 11, 2001 attacks, Hurricane Katrina, and presidentially

---

[22] https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020.pdf

declared natural disasters. ***Although the COVID-19 public health emergency has had an unprecedented impact on air travel, the airlines' obligation to refund passengers for cancelled or significantly delayed flights remains unchanged.***

The Department is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with nonrefundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed. In many of these cases, the passengers stated that the carrier informed them that they would receive vouchers or credits for future travel. But many airlines are dramatically reducing their travel schedules in the wake of the COVID-19 public health emergency. As a result, passengers are left with cancelled or significantly delayed flights and vouchers and credits for future travel that are not readily usable. ***Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier. The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions)***. The focus is not on whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger. Accordingly, the Department continues to view any contract of carriage provision or airline policy that purports to deny refunds to passengers when the carrier cancels a flight, makes a significant schedule change, or significantly delays a flight to be a violation of the carriers' obligation that could subject the carrier to an enforcement action.

(emphasis added).

35.     Thus, Defendant's false and misleading refund claims not only violate its contracts and New York Gen. Bus. Law §§ 349 and 350, but are in direct violation of the DOT Enforcement Notice.  Additionally, Defendant's conduct gives rise to claims for breach of contract, recission, conversion, Money Had and Received, and unjust enrichment.

## **CLASS ACTION ALLEGATIONS**

36.    Plaintiff seeks certification of a class under Fed.R.Civ.P. 23 (b)(1), (b)(2), (b)(3) and/or (c)(4), as may deemed appropriate by the Court.  Plaintiff brings this action on behalf of himself and on behalf of all other consumers in the United States who purchased Air Canada airline tickets and were not provided a full refund by Air Canada for cancelled Air Canada, Air Canada Rouge or Air Canada Express flights scheduled to operate within, from, or to the United States from March 1, 2020 through the date of a class certification order.  Excluded from the Class are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned and any members of their immediate families.

37.    Plaintiff also seeks to represent a subclass of all members of the Class who purchased the relevant tickets in New York ("New York Subclass").

38.    Upon information and belief, there are thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.  The precise number of Class members is unknown to Plaintiff, but may be easily discovered from Defendant's records.

39.    There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

40.    Common questions of law or fact exist as to all members of the Class.  These questions predominate over the questions affecting only individual Class members.  These common legal or factual questions include:

a.    Whether Defendant engaged in the false, misleading, and unlawful conduct alleged;

b. Whether Defendant failure to provide the flights Plaintiff and Class members booked by cancelling them is grounds for recission entitling Plaintiff and Class members to the return of the purchase price they paid;

c. Whether Defendant promised to refund customers for flights it cancelled;

d. Whether Defendant has a practice of denying refunds to Class Members for flights Defendant cancelled;

e. Whether Defendant's practice of denying refunds to customers on flights cancelled by Defendant breaches its contracts with Plaintiff and Class members, and is otherwise unfair, deceptive, and/or misleading; and

f. The appropriate measure of damages and/or restitution.

41. The Class is ascertainable because its definition is objective and specific. Class Members may be identified through claim forms or receipts. Additionally, Class Members may be identified through records of airline ticket sales.

42. Plaintiff Vozzolo's claims are typical of the claims of the Class, in that he is a consumer who purchased Air Canada airline tickets in the United States that were promised and represented to be refundable by Defendant if cancelled, but Defendant refused to provide a refund after canceling his flight. His claims are typical of the claims of the New York Subclass in that he is a consumer who purchased Air Canada airline tickets in the state of New York that were promised and represented to be refundable by Defendant if cancelled the flights, but Defendant refused to provide a refund after canceling the flights. Plaintiff Vozzolo, therefore, is no different in any relevant respect from any other Class member, and the relief sought is common to the Class and the New York Subclass.

43.     Plaintiff Vozzolo is an adequate representative of the Class and Subclass because his interests do not conflict with the interests of the members of the Class and Subclass he seeks to represent, and he has retained counsel competent and experienced in conducting complex class action litigation.  Plaintiff and his counsel will adequately protect the interests of the Class and Subclass.

44.     A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by each individual member of the Class and Subclass are small given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's conduct.  Thus, it would be virtually impossible for members of the Class and Subclass to effectively redress the wrongs done to them through individual actions. Moreover, even if members of the Class and Subclass could afford individual actions, it would still not be preferable to class-wide litigation.  Individual actions also present the potential for inconsistent or contradictory judgments, which would be dispositive of at least some of the issues and hence interests of the other members not party to the individual actions, would substantially impair or impede their ability to protect their interests, and would establish incompatible standards of conduct for the party opposing the class.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

45.     Further, in the alternative, the action may be maintained as class actions with respect to particular issues, pursuant to Fed.R.Civ.P. 23(c)(4).

## CAUSES OF ACTION

## COUNT I

### (Contract)

46.    Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

47.    Plaintiff brings this Count I individually and on behalf of the members of the Class and Subclass.  The allegations for the "Class" in this Count shall alternatively be deemed to be asserted on behalf of the Subclass.

48.    Defendant entered into a contract with Plaintiff and Class members where the essential basis of the bargain was to provide the service of airline flights they booked in exchange for money they paid to Defendant.  Defendant failed to provide the flights Plaintiff and Class members booked when it cancelled them.  The return of the purchase price to Plaintiff and Class members is a remedy where, as here, the contract has been effectively rescinded by Defendant's failure to provide the flight they booked.  Plaintiff and the Class seek recission of their contracts for flights they booked with Defendant that it cancelled, and that Defendant return the amounts Plaintiff and Class members paid for those cancelled flights.

49.    In the event recission is not available, Plaintiff and the Class alternatively seek damages from Defendant for its breach of contract.  Defendant entered into a contract with Plaintiff and Class Members to provide the service of airline flights they booked in exchange for money they paid to Defendant, and to provide a refund in the event that it should cancel such flights.

50.    Defendant breached this contract when it did not provide Plaintiff and Class Members with the bargained for flights or the bargained for refunds.

51.     Defendant's breach has caused Plaintiff and Class Members to suffer injury by having paid money and not having received the benefit of the bargained for flights or refund.

## COUNT II

**(Deceptive Acts or Practices, New York Gen. Bus. Law. § 349)**

52.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

53.     Plaintiff brings this Count II individually and on behalf of the members of the Subclass.

54.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misrepresenting that it did not have an obligation to refund customers for flights it cancelled, when in fact it does.

55.     The foregoing deceptive acts and practices were directed at consumers, and have had a broad impact on consumers in New York.

56.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent Defendant's Terms and Conditions.

57.     Plaintiff and members of the Subclass were injured because they paid for Air Canada airline tickets and believed them to be refundable if cancelled, but Defendant later claimed that they were not and refused to provide the refunds.

58.     Plaintiff, on behalf of himself, other members of the Subclass to recover actual damages or $50.00, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## COUNT III

### (False Advertising, New York Gen. Bus. Law. § 350)

59.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

60.     Plaintiff brings this Count III individually and on behalf of the members of the Subclass.

61.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law.

62.     Defendant's recent refund policy is false, misleading and deceptive statements and representations of fact that were directed to consumers.

63.     The recently implemented Air Canada airline ticket "refund policies" are false, misleading and deceptive statements and representations of fact have resulted in consumer injury and harm to the public interest.

64.     As a result of Defendant's false, misleading and deceptive "refund policy" statements and representations of fact, Plaintiff and the Subclass have suffered and continue to suffer economic injury.

65.     Plaintiff, on behalf of himself and other members of the Subclass, seeks to recover actual damages or $500.00, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## COUNT IV

### (Conversion)

66.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

67.     Plaintiff brings this Count IV individually and on behalf of the members of the Class and Subclass.  The allegations for the "Class" in this Count shall alternatively be deemed to be asserted on behalf of the Subclass.

68.     Plaintiff and members of the Class have an ownership interest and right to the monies paid for the tickets for cancelled flights sold by Defendant, as well as for the consequential damages resulting therefrom.

69.     Defendant has intentionally and wrongly asserted dominion over the payments illegally diverted to them for the cancelled flights, and consequential damages resulting therefrom. Defendant has done so every time that Plaintiff and members of the Class paid to purchase a ticket for a flight that was later cancelled or subject to a significant schedule change by Air Canada.

70.     As a direct and proximate cause of Defendant's conversion, Plaintiff and members of the Class suffered damages in the amount of the payments made for each time they purchased a ticket for a flight that was cancelled or subject to a significant schedule change by Turkish Airlines, and in the amount of consequential damages resulting therefrom.

## COUNT V

### (Money Had And Received)

71.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

72.     Plaintiff brings this Count V individually and on behalf of the members of the Class and Subclass.  The allegations for the "Class" in this Count shall alternatively be deemed to be asserted on behalf of the Subclass.

73.     Defendant received money in the form of airline ticket fees that were intended to be used for the benefit of Plaintiff and the Class.

74.     Those airline ticket fees were not used for the benefit of Plaintiff and the Class, and Defendant has not given back or refunded the wrongfully obtained money and airline tickets fees to Plaintiff and the Class.

75.     Defendants obtained roughly money in the form of airline ticket fees that was intended to be used to provide flights for Plaintiff and the Class.  Defendant, however, has retained all of the airline ticket fees while cancelling its flights that Plaintiff and members of the Class were supposed to be passengers on.

## COUNT VI

### (Unjust Enrichment)

76.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

77.     Plaintiff brings this Count VI individually and on behalf of the members of the Class and Subclass.  The allegations for the "Class" in this Count shall alternatively be deemed to be asserted on behalf of the Subclass.  This Count is brought in the alternative.

78.     By misleadingly representing that its airline tickets were no longer refundable if the trip was cancelled by Air Canada, Defendant obtained money from Plaintiff and members of the Class.

79.     By virtue of the unlawful conduct described herein, Defendant will be unjustly enriched if it is permitted to retain the money it obtained from Plaintiff and members of the Class for its misrepresented airline tickets.

80.     In equity and good conscience, Defendant should be required to return to Plaintiff and the Class the amount they paid to purchase their airline tickets.  Otherwise, Defendant will be unjustly enriched and Plaintiff and members of the Class will be left without adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the members of the Class request an award, relief and entry of a judgment, as follows:

A.     An order certifying that this action is properly brought and may be maintained as a class action; that Plaintiff Vozzolo be appointed representative of the Class; and that Plaintiff's undersigned counsel be appointed Lead Counsel for the Class.

B.     An order rescinding the contracts between Plaintiff and the Class and Defendant for booked flights not provided due to their cancellation by Defendant, and directing Defendant to return all amounts Plaintiff and Class members paid for those cancelled flights.

C.     Restitution in such amount that Plaintiff and members of the Class paid to purchase their cancelled airline tickets.

D.     Compensatory damages for Causes of Action for which they are available.

E.     Statutory damages allowable under New York Gen. Bus. Law §§ 349 and 350-e.

F.     Punitive damages for Causes of Action for which they are available.

G.     An Order awarding Plaintiff her costs of suit, including reasonable attorneys' fees and pre- and post-judgment interest.

H.      An Order requiring an accounting for, and imposition of, a constructive trust upon all monies Defendant received as a result of the misleading, fraudulent and unlawful conduct alleged herein.

I.      Such other and further relief as may be deemed necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action and/or issues so triable.

DATED:  May 5, 2020

**FEINSTEIN DOYLE PAYNE**
  **& KRAVEC, LLC**

By:  *s/Joseph N. Kravec, Jr.*
       Joseph N. Kravec, Jr.

29 Broadway, 24th Floor
New York, NY 10006-3205
Telephone: (212) 952-0014
Email: jkravec@fdpklaw.com

 and

429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007

**VOZZOLO LLC**

By:  *s/Antonio Vozzolo*
       Antonio Vozzolo

345 Route 17 South
Upper Saddle River, New Jersey 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com

***Counsel for Plaintiff and the Proposed Class***