**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EMILIO L. VOZZOLO, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>AIR CANADA,<br><br>        Defendant. | Civil Action No.:  7-20-cv-03503 (PMH) |
| THOMAS PIERCY, on behalf of himself and al others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>AIR CANADA,<br>        Defendant. | Civil Action No.:  1:20-cv-04988 (PMH) |
| NIKKI M. ABSKARON, PETER A. ABSKARON, and BARRY WINOGRAD, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>AIR CANADA,<br><br>        Defendant. | Civil Action No.:  7:20-cv-11037 (PMH) |

**STIPULATION AND [PROPOSED] ORDER REGARDING**
**DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

After conferring on these matters, the Parties hereby propose to the Court the following stipulated order for production of Electronically Stored Information ("ESI Order").

## I.    DEFINITIONS

As used herein, the following terms shall have the following definitions:

A.    The term "electronically stored information" or "ESI" is coextensive with Fed. R. Civ. P. 34, and means information or data stored electronically, regardless of the media or whether it is in the original format in which it was created, as opposed to stored in hard copy. It shall include, but not be limited to computer-generated information or data, stored in or on any storage media located on hard drives, USB or thumb drives, databases, computers, disks, CD-ROM, magnetic tape, optical disks, or other devices for digital data storage or transmittal; as well as writings, records, files, correspondence, reports, memoranda, calendars, diaries, minutes, email, telephone message records, hard drives, removable computer storage media such as tapes, discs and cards, printouts, document image files, Web pages, databases, spreadsheets, books, ledgers, journals, orders, invoices, bills, vouchers, checks statements, worksheets, summaries, compilations, computations, charts, diagrams, PowerPoints or other demonstrative media, graphic presentations, drawings, films, charts, digital or chemical process photographs, video, phonographic, tape or digital records and any transcripts thereof, drafts, jottings and notes, studies or drafts of studies or other similar such material, or other real or virtualized devices or media. Information which serves to identify or locate such material, such as file inventories, file folders, indices, and metadata.

B.    The term "Documents" shall be interpreted to have the broadest meaning contemplated by Federal Rule of Civil Procedure 34(a)(1)(A) and shall include ESI and paper discovery.

C.    The term "Document Family" means a collection of pages or files maintained together constituting a logical single communication of information, but consisting of more than a

single stand-alone record. Examples include a fax cover sheet, the faxed letter, and an attachment to the letter - the fax cover sheet being the "Parent," and the letter and attachment being a "Child," or an email and associated attachments, or a presentation with embedded files. The Parties will take reasonable steps to preserve parent-child relationships in ESI and hard copy Documents already in existence from the ordinary course of business.

D.     The term "email" means an electronic means for communicating written information through non-telephone systems that will send, store, process and receive information.

E.     The terms "ESI" and "Document(s)" are used interchangeably throughout this Protocol and, to the fullest extent possible, both terms are intended to encompass both electronically stored information and documents as defined by the Federal Rules of Civil Procedure.

F.     The term "Extracted text" or "Full Text" means the text extracted from a native Document, and includes all header, footer and Document body information when available.  A "Text File" is a file containing the full text of native files extracted directly from the native file, or, in the case of hard copy Documents or scanned PDF Documents, subject to OCR, a file containing the text resulting from the OCR.

G.     The term "Format" means the internal structure of a file, which defines the way it is stored and its intended use.

H.     The term "Hard Copy Discovery" means any document or thing discoverable under Fed. R. Civ. P. 26(b)(I) and Fed. R. Civ. P. 34 that cannot be characterized as ESI.

I.     The term "Litigation" means the case captioned above.

J.     The term "Load file" means an electronic file that relates to a set of scanned images or electronically processed files, and that indicates where individual pages or files belong together

3

as Documents, to include attachments, and where each Document begins and ends, and may contain data relevant to the individual Documents such as selected metadata, coded data, and extracted text. A load file is used to import all image, native, and text files and their corresponding production information into a Document database. The Producing Party shall produce a load file for all produced Documents in accordance with specifications provided herein to ensure transfer of accurate and usable data.

       K.      The term "Metadata" means: (i) structural information embedded in a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such file; (ii) information generated automatically by the operation of a computer or other information technology system when a file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system; and (iii) production process fields created in the course of producing Documents.

       L.      The term "Native Format" means the underlying file(s) containing the ESI at issue in the file system in which such ESI was originally created, viewed and/or modified.

       M.      The term "OCR" means the optical character recognition file which is created by a technology process that captures text from an image for the purpose of creating a parallel text file that can be associated with the image and is searchable.

       N.      The term "Party" means any person, business organization, or legal entity that is a named plaintiff or defendant in this Litigation.

       O.      The term "Responsive Document" means any document, excluding source code, that is responsive to any document requests served on the Producing Party in the Litigation that the Producing Party has agreed to produce or that the Producing Party has been ordered to produce by the Court.

P.     The term "Requesting Party" means the Party requesting the production of Documents.

Q.     The term "Producing Party" means the Party that may be producing Documents in response to the request of the Requesting Party.

R.     The term "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

S.     The term "Unitization" means the assembly of individual scanned pages or electronically processed files into Documents and indicates where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends.  The Parties shall make a good faith attempt at Unitization for hard-copy documents, but certain types of hard-copy documents may not lend themselves to unitization for the purposes of scanning.  The parties shall meet and confer in good faith if any such issues arise.

## II.     PRODUCTION FORMATS AND METADATA PROTOCOLS

A.     **General.** In general, responsive documents originally collected as ESI or Hard Copy Discovery will be processed to extract metadata and text and converted to single-page TIFF format using Group 4 compression with at least 300 dots per inch ("dpi") resolution.  They will be produced with corresponding TXT files that contain a given document's underlying text, extracted via processing or through Optical Character Recognition ("OCR") if no text can be extracted. Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively," unless such documents contain redactions, in which case the documents will be produced in TIFF format. A Producing Party

retains the option to produce ESI in alternative formats if so agreed by the requesting Party, which may include native format, or a combination of native and TIFF formats. Images may be reduced by a reasonable amount to allow for a dedicated space for page numbering and other endorsements of documents. Images may be in black and white, unless color is necessary to understand the meaning of the document. All documents produced pursuant to this paragraph shall be produced with its extracted/OCR text in a document level TXT file that is named with the same Bates-number as the corresponding TIFF image of the first page (*e.g.*, a single page document bearing a Bates-number ending in 002356 shall result in two files for production: Bates-002356.tiff and Bates-002356.txt). When email files are produced pursuant to this paragraph, the emails shall be printed to TIFF such that the headers are displayed (*i.e.*, To, From, Subject, Date, and any Attachments shall be displayed at the top of each email). The Producing Party shall also produce a load file for e-discovery in Concordance format.

**B.    Exceptions.** Exceptions include files such as Microsoft Excel files, audio files, video files, and database files that may be produced on occasion in native format. PowerPoint slides will be produced in TIFF format, except where dynamic content requires production in native format. To the extent that print-outs or images of all or part of a spreadsheet were also maintained in static form (*e.g.*, as a PDF attachment), those documents will be produced as static images. Documents containing redactions shall be produced in TIFF format. All other file types shall be produced in TIFF format unless otherwise agreed upon. Documents produced in native format will be accompanied by a slip sheet containing information such as the Bates-numbering for the document page and confidentiality designations. To the extent such documents are used in discovery or at trial, or are otherwise disclosed to third parties, the accompanying slip sheet must be maintained with and precede the natively produced document at all times. If particular

documents warrant a different format, the Parties will cooperate regarding the mutually acceptable production of such documents in an alternative format.

      **C.**     **Culling of ESI**

      1.     Deduplication. A Party is only required to produce a single copy of a responsive document or family of documents. The Parties shall make reasonable efforts to globally deduplicate across the processed data set, stand-alone documents against one another and email against entire families. Deduplication will be accomplished using hash values (*e.g.*, MD5 or SHA-1 algorithms). All email and attachment family relationships will be preserved. As a result, a document will not be considered duplicative if it appears in different document families, and/or contains any additional text, recipients or markings such that it is not identical in its entirety.

      2.     Email Threading. The Parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being reviewed and produced, but under no circumstances will email thread suppression remove from a production any unique branches and/or attachments contained within an email thread. For the avoidance of doubt, all attachments to any responsive email shall be produced.

      3.     Email Domain Culling. Excluded from any ESI search process shall be uniquely identifiable categories of documents, such as emails from domains typically associated with junk email, such as fantasy football-related emails or newsletters or alerts from non-industry sources.  Upon request from the other party, the Parties shall disclose domain names excluded under this paragraph prior to any search performed pursuant to Section III of this ESI Order.

      4.     System Files. ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National

Institute of Standards & Technology as it exists at the time of de-NISTing. Other file types may be added to the list of excluded files by agreement of the Parties.

     **D.**      **Bates-Numbering.** Files will be named according to the Bates-number of the corresponding production images. The Bates-number will (i) employ a consistent Bates prefix across the Producing Party's entire production; (ii) contain no special characters; and (iii) be numerically sequential within a given document. Attachments to documents will be assigned Bates-numbers that directly follow the Bates-numbers on the documents to which they were attached. If a Bates-number or set of Bates-numbers is skipped, the skipped number or set of numbers will be noted. If a member of a Document family that has otherwise been determined to be responsive cannot be technically processed (e.g., unsupported file format, file corruption, inaccessible password-protected Document), those technical problems shall be identified and disclosed to the requesting Party by production of a Bates-labeled slip sheet that states "Technical issue—file cannot be processed" or otherwise indicates on its face that a processing error has occurred; the associated metadata for the file with the technical problem shall be produced if reasonably possible. A Requesting Party thereafter may raise with the Producing Party any questions or concerns, and the Parties shall meet and confer to attempt to resolve any issues.

     **E.**      **Metadata.** Contemporaneous with any production, the Producing Party shall produce a load file containing the available metadata fields identified in Appendix 1 to this ESI Protocol. Recognizing that neither Party has yet loaded or processed its data in an e-discovery platform, the Parties shall meet and confer should production of certain metadata fields not be possible due to undue burden or cost.

### III.    ELECTRONICALLY STORED INFORMATION

**A.    ESI of Limited Accessibility.** If a Producing Party contends that any responsive ESI is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that Party shall timely identify such ESI with reasonable particularity and shall provide the Receiving Party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, the likely costs that might be incurred in producing such ESI, the method used for storage of such ESI (*e.g.*, the type of system used to store the ESI) and the places in which such ESI is kept. The parties shall negotiate in good faith concerning the production of any such ESI.

**B.    Sources and Search Methodology.**

1.    The procedures and protocols set forth in this ESI Order shall govern the production of Responsive Documents between the Parties in the Litigation. Any practice or procedure set forth herein may be varied only by further written agreement of all of the Parties.

2.    All Parties shall make a reasonable search for reasonably accessible discoverable information in ESI systems, removable media, and cloud-based accounts including social media and hard copy paper Documents.

3.    Each Party shall perform reasonably diligent searches of the sources within their custody or control to collect responsive and reasonably accessible ESI, regardless of whether such sources are currently in use, with the exception of sources or devices of an entity Party not likely to have responsive information. These may include but are not limited to: (i) email accounts used by a Party; (ii) electronic devices used by a Party (e.g., desktop or laptop computers, tablets, digital cameras); (iii) any other hardware storage devices used by a Party (e.g., external hard drives, memory cards, USB or thumb drives, CDs/DVDs); (iv) any social media used by a Party (e.g.,

Facebook, Instagram, LinkedIn, Twitter, YouTube, Pinterest, or other online collaboration tools such as Google+ or Yahoo! groups); and (v) any cloud storage used by a Party (e.g., DropBox, Microsoft Office365 Account, Google Drive, iCloud, Amazon Drive, etc.).

4.      Reasonably diligent searches may require running search terms agreed upon by the Parties; reviewing files, communications, videos, and photographs; or otherwise conducting an actual, physical search of the sources. Counsel for all Parties shall take an active role in identifying, preserving, collecting, reviewing, and producing all responsive ESI and associated metadata. Parties shall produce responsive ESI in a manner that includes and preserves metadata. If a Party contends that the production of materials sought from one or more sources are outside the scope of Fed. R. Civ. P. 26(b)(1), the Parties shall meet and confer to attempt to resolve the issue. Nothing in this Protocol shall prevent a Party from seeking the Court's intervention with respect to any such issue if the Parties are unable to resolve it themselves or from preventing any other Party from opposing any relief sought.

5.      The Parties may confer regarding the identification and collection of sources of relevant ESI. The Parties may decide to meet and confer regarding: (a) the identity and role of custodians possessing relevant information from whom Documents will be collected and produced; (b) search methodology and search terms, if any, to be applied, and use of technology assisted review, or similar technologies, if any; (c) relevant data sources, including custodial, noncustodial, and third-party Documents; and (d) any applicable and appropriate timeframes for the collection, review, and production of Documents.

6.      The Parties may confer regarding search methodologies, search terms, date restrictions, and custodian restrictions. Before implementing any search based on key word search terms, the Producing Party may provide a list of proposed search terms to the Receiving Party (i.e.,

the Party requesting or receiving Documents) and the Parties may discuss those terms and any additional terms, or other requested changes, proposed by the Receiving Party. The Parties shall participate in an iterative and cooperative approach in which the Parties may meet and confer regarding reasonable and appropriate methods to increase the relative precision or proportion of relevant and responsive Documents within the search results and production sets, which may include exchanging "hit count" reports and having the Producing Party perform random sampling of nonresponsive sets. A Producing Party will not, however, be required to share the sampling of nonresponsive Documents with the Receiving Party.  The exchange of information shall not waive a Producing Party's or Receiving Party's objection or rights regarding the production of such Documents. Nothing in this provision is intended to replace a Party's obligations under the Federal Rules of Civil Procedure to produce non-privileged relevant discovery, proportional to the needs of the case, in connection with searches conducted outside of the agreed search methodology.

C.     **Preservation.**

1.     The Parties shall, during the pendency of this Litigation, take all reasonable steps to preserve documents, ESI and tangible objects in their possession, custody or control that may be relevant to the Litigation.  Defendants will identify when a preservation hold was implemented and when their document retention and destruction policy was suspended for the destruction of all relevant document and documents that can lead to the discovery of relevant documents.

2.     Pursuant to Fed. R. Civ. P. 26(b)(l), the relevant information preserved need not be admissible at the trial if the discovery of the documents, ESI, or tangible objects appear reasonably calculated to lead to the discovery of admissible evidence. This duty to preserve extends to documents, ESI, and tangible objects in the possession, custody, and control of the

Parties to the Litigation, and any employees or agents reasonably expected to possess materials anticipated to be the subject of discovery in the Litigation ("Custodian(s)").  Nothing in this ESI Order is intended to diminish any obligations imposed by the Federal Rules of Civil Procedure.

3.     The Producing Party shall take reasonable steps to collect and process documents using methods that avoid spoliation of data. Provided that the Parties take reasonable and proportionate steps to comply with this ESI Order and further complied with their respective obligations under the Federal Rules to preserve evidence following the filing of the Litigation, the Parties agree that there is a presumption that sanctions are not appropriate for failing to produce ESI lost inadvertently.

4.     Within 60 days of this ESI order, the Parties shall provide a description of ESI from sources that are not reasonably accessible because of undue burden or cost and that will not be reviewed for responsiveness or produced, but that will be preserved in accordance with Federal Rule of Civil Procedure 26(b)(2)(B).

5.     Within 60 days of this ESI order, the Parties shall provide a description of ESI from sources that: (a) the party believes could contain relevant information; but (b) has determined, under the proportionality factors, is not discoverable and should not be preserved.

## IV.     PRIVILEGE LOG AND TREATMENT OF PRIVILEGED MATERIALS

A.     **Privilege Log.** Consistent with the Federal Rules of Civil Procedure, and the Local Rules for the Southern District of New York, a Producing Party withholding or redacting any responsive document on the grounds of attorney-client privilege, work product, or any applicable privilege shall provide to the receiving party a privilege log.  The Parties shall meet and confer regarding the timing of the production of such privilege logs.

12

**B.     Privilege Log Contents.** For each document withheld or redacted, the privilege log shall contain the following information:  (i) the date of the document; (ii) the identity of all persons who authored, signed, or otherwise prepared the document; (iii) the identity of all persons designated as addressees or copyees; (iv) a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privileged or immunity; (v) the type or nature of the privilege asserted, attorney-client privilege, work-product doctrine, etc.; and (vi) for redacted documents only, the bates numbers corresponding to the first and last page of any document redacted. For all individuals listed on a log whose role as an attorney is the basis for a claim of privilege, the privilege log shall contain some indication that the individual is an attorney (for example, an asterisk next to each attorney's name).

**C.     Protocols for Logging email Chains**.  Any email chain (i.e., a series of emails linked together by email responses and forwarding) that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be logged as one document and shall be identified by the top-most email in the chain that is withheld or redacted.  The parties shall not be required to log identical copies of an email that is included in a chain that has been logged in accordance with this Paragraph.

**D.     Protocols for Partially Privileged or Protected Documents**.  If only a portion of a Responsive Document, including, without limitation, email, is claimed to be privileged or protected, the Producing Party shall furnish a redacted version of the Responsive Document, removing only the part(s) thereof claimed to be privileged or protected from disclosure. If portions of documents are redacted for privilege or for any other reason, the Producing Party shall mark

every page or significant component that contains privileged or redacted information "Redacted." The Producing Party shall provide any such redacted documents in the privilege log.

      **E.**      **502(d) Order and Clawback Procedure.** This ESI Order is entered pursuant to Rule 502(d) of the Federal Rules of Evidence. Subject to the provisions of this ESI Order, if the Producing Party discloses information in connection with the pending litigation that the Producing Party thereafter claims to be privileged or protected by the attorney- client privilege or work-product protection, or any other applicable privilege  ("Protected Information"), the disclosure of that Protected Information will not constitute or be deemed a waiver or forfeiture-in this or any other action-of any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter.

      1.      This ESI Order protects any disclosure of Protected Information, whether that disclosure is inadvertent or otherwise.

      2.      Each party is entitled to decide, in its sole discretion, the appropriate degree of care to exercise in reviewing materials for privilege. Irrespective of the care that is actually exercised in reviewing materials for privilege, the Court hereby orders that disclosure of Protected Information in discovery conducted in this litigation shall not waive any claim of privilege or work-product protection that the Producing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter.

      3.      A Producing Party must notify the party receiving the Protected Information, in writing, that it has disclosed that Protected Information without intending a waiver by the disclosure.  Upon receipt of notification, the Receiving Party shall immediately take all reasonable steps to destroy or return all copies, electronic or otherwise, of such document or other

information, and shall provide a certification that it will cease further review, dissemination, and use of the Protected Information.

        4.     This ESI Order shall be interpreted to provide the maximum protection allowed to the Producing Party by Federal Rule of Evidence 502(d). The provisions of Federal Rule of Evidence 502(b)(2) are inapplicable to the production of Protected Information under this ESI Order. However, if for any reason, a Court finds that this Section is inapplicable to Protected Information, then Rule 502(b) will apply in its absence.

        **F.**    **Contesting Claim of Privilege or Work-Product Protection.** Nothing in this ESI Order shall limit the Receiving Party's right to challenge (on grounds unrelated to the fact or circumstances of the disclosure) the Producing Party's claim that Protected Information is protected from disclosure by the attorney-client privilege or work-product doctrine, or any other applicable privilege.  If, after undertaking an appropriate meet-and-confer process, the Parties are unable to resolve any dispute they have concerning the protection of documents for which a claim of disclosure has been asserted, the Receiving Party may file the appropriate motion or application as provided by the Court's procedures to compel production of such material.  Any Protected Information submitted to the Court in connection with a challenge to the Producing Party's claim of attorney-client privilege or work-product protection, or any other applicable privilege shall not be filed in the public record, but rather shall be redacted, filed under seal, or submitted for *in camera* review.

## V.    LIMITATIONS ON PRODUCTION

        The Parties will endeavor to produce documents in a reasonably timely manner and in accordance with the timelines set forth in the Federal Rules of Civil Procedure and the Court's scheduling orders, as emended.  Production in the Litigation is anticipated to be conducted on a

rolling basis with Parties making reasonable efforts to expedite the process. If either Party feels production has been unreasonably delayed or in any way deficient, the Parties shall meet and confer to reach a mutually agreeable consensus prior to court involvement.

Dated:  February 5, 2021

**FEINSTEIN DOYLE PAYNE**
  **& KRAVEC, LLC**

By: /s/ Joseph N. Kravec, Jr.
     Joseph N. Kravec, Jr.

29 Broadway, 24th Floor
New York, NY 10006-3205
Telephone: (212) 952-0014
Email: jkravec@fdpklaw.com

 and

429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007

     - and -

**VOZZOLO LLC**

By: /s/ Antonio Vozzolo (via consent)
     Antonio Vozzolo

345 Route 17 South
Upper Saddle River, New Jersey 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
avozzolo@vozzolo.com

*Attorneys for Plaintiffs Vozzolo and Winograd*

**SQUITIERI & FEARON, LLP**

By:  /s/ Stephen J. Fearon, Jr. (via consent)
     Stephen J. Fearon, Jr.

**HOLLAND & KNIGHT**

By: /s/ Sarah G. Passeri (via consent)
     Sarah G. Passeri

31 West 52nd Street
New York, NY 10019
Telephone: (215) 513-3563
Facsimile: (201) 604-8400
Email: sarah.passeri@hklaw.com

*Attorneys for Air Canada*

32 East 57th Street, 12th Floor
New York, New York 10022
Telephone: (212) 421-6492
Email: stephen@sfclasslaw.com

*Attorneys for Plaintiff Thomas Piercy*

**SO ORDERED**, this _____ day of _____, 2021.

_____
HON. PHILIP M. HALPERN, U.S.D.J.

## Appendix 1: ESI Metadata and Coding Fields

| Field Name[1] | Populated For *(Email, Edoc, Calendar, Contact, Cellphone, or All)* | Field Description |
|---|---|---|
| BegBates | All | Control Numbers. |
| EndBates | All | Control Numbers. |
| BegAttach | All | Control Numbers (First production Bates number of the first document of the family). |
| EndAttach | All | Control Numbers (Last production Bates number of the last document of the family). |
| Custodian | All | Custodian name (ex. John Doe). |
| CustodianOther or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| LogicalPath | All ESI Items | The director structure of the original file(s). Any container name is included in the path. |
| Hash Value | All | The MD5 or SHA-1 hash value. |
| NativeFile | All | Native File Link |
| Email Subject | Email | Subject line of email. |
| Date Sent | Email | Date email was sent. |
| Date Mod | Email, Edoc | Date the document was modified. |
| Time Sent | Email | Time email was sent. |
| Time Zone Used | All | Time zone used to process data during document collection and processing. |
| Receive Time | Email | Time email was received. |
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| Date Created | Edoc | Date the document was created. |
| File Name | Email, Edoc | File name of the edoc or email. |
| Title | Edoc | Any value populated in the Title field of the document properties. |

---

[1] Field Names can vary from system to system and even between different versions of systems. Thus, the Parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Order.

| Field Name[1] | Populated For *(Email, Edoc, Calendar, Contact, Cellphone, or All)* | Field Description |
|---|---|---|
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| DocExt | All | File extension of the document. |
| TextPath | All | Relative path to the document level text file. |
| Redacted | All | "X," "Y," "Yes," and "True" are all acceptable indicators that the document is redacted. Otherwise, blank. |
| Confidentiality | All | Indicates if document has been designated as "Confidential" or "Confidential Information-Subject To Court Order" under the Protective Order. |
| Parent ID or ParentBates | All | The Begin Bates number of the parent document in the relational group. |