**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EMILIO L. VOZZOLO, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>AIR CANADA,<br><br>    Defendant. | Civil Action No.:  7-20-cv-03503 (PMH) |
| THOMAS PIERCY, on behalf of himself and al others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>AIR CANADA,<br>    Defendant. | Civil Action No.:  1:20-cv-04988 (PMH) |
| NIKKI M. ABSKARON, PETER A. ABSKARON, and BARRY WINOGRAD, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>AIR CANADA,<br><br>    Defendant. | Civil Action No.:  7-20-cv-11037 (PMH) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION FOR AN ORDER DIRECTING AIR CANADA TO**
**ISSUE CORRECTIVE NOTICE TO PUTATIVE CLASS MEMBERS**

## <u>TABLE OF CONTENTS</u>

I.  Preliminary Statement...............................................................................................1

II.  Legal Standard and Burden of Proof ................................................................3

III.  In Light of Air Canada's Argument That Its Refund Offer Will Effect a Waiver of Claims, Its Notices May Cause Class Members to Unknowingly Forfeit Legal Rights and Remedies..........................................................................................................5

IV.  The Court Should Order Air Canada to Issue a Corrective Notice to Class Members........9

V.  Conclusion ........................................................................................................13

i

# **TABLE OF AUTHORITIES**

**Cases**

*Agerbrink v. Model Serv. LLC,*
  No. 14 CIV. 7841 JPO JCF, 2015 U.S. Dist. LEXIS 145563 (S.D.N.Y. Oct. 27, 2015) ........ 5

*Bank One, N.A. v. United States Fid. & Guar. Co.,*
  869 F. Supp. 426 (S.D. W. Va. 1994) ...................................................................... 7

*Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.,*
  2008 NY Slip Op 1418, 10 N.Y.3d 187, 856 N.Y.S.2d 505, 886 N.E.2d 127. ....................... 8

*Capstone Logistics Holdings, Inc. v. Navarrete, No. 17-CV-4819*
  (GBD) (BCM), 2018 U.S. Dist. LEXIS 217876 (S.D.N.Y. Dec. 13, 2018) ........................... 6

*Davis v. Harrington,*
  160 Mass. 278, 35 N.E. 771 (1894) ...................................................................... 7

*Donati v. Shaffer,*
  83 N.Y.2d 828, 611 N.Y.S.2d 495, 633 N.E.2d 1099 (1994) ................................................ 6

*Erhardt v. Prudential Group,*
  629 F.2d 843 (2d Cir. 1980) ............................................................................... 3

*Gulf Oil Co. v. Bernard,*
  452 U.S. 89 (1981) ................................................................................ *passim*

*Hinds Cty. v. Wachovia Bank N.A.,*
  790 F. Supp. 2d 125 (S.D.N.Y. 2011) .......................................................... 4, 5, 11

*In re Currency Conversion Fee Antitrust Litig.,*
  361 F. Supp. 2d 237 (S.D.N.Y. 2005) .................................................... 3, 4, 10, 12

*In re Initial Pub. Offering Sec. Litig.,*
  499 F. Supp. 2d 415 (S.D.N.Y. 2007) ............................................................... 3-4

*N. River Ins. Co. v. ACE Am. Reinsurance Co.,*
  361 F.3d 134 (2d Cir. 2004) ......................................................................... 2, 7

*O'Conner v. Agilant Sols., Inc.,*
  444 F. Supp. 3d 593 (S.D.N.Y. 2020) ......................................................... 5, 10, 11

*Porsch v. LLR, Inc.,*
  380 F. Supp. 3d 418 (S.D.N.Y. 2019) .................................................................. 6

*Ralph Oldsmobile, Inc. v. GMC, 99 Civ. 4567*
  (AGS), 2001 U.S. Dist. LEXIS 13893 (S.D.N.Y. Sep. 7, 2001) ................................... *passim*

*Rhodes v. Davis,*
  628 F. App'x 787 (2d Cir. 2015) ....................................................................... 6

*TIG Ins. Co. v. Newmont Mining Corp.*,
    2005 U.S. Dist. LEXIS 22410 (S.D.N.Y. Oct. 3, 2005) ............................................ 7

*United States v. Consol. Edison Co.*,
    590 F. Supp. 266 (S.D.N.Y. 1984) .................................................................... 12

*Wu v. Pearson Educ. Inc.*,
    2011 U.S. Dist. LEXIS 60881 (S.D.N.Y. June 7, 2011) ........................................ 5

*Zamboni v. Pepe W. 48th St. LLC*,
    2013 U.S. Dist. LEXIS 34201 (S.D.N.Y. Mar. 12, 2013) ................................ 4, 11

**Statutes**

Cal. Civ. Code § 1780 ........................................................................................... 6

Cal. Civ. Code § 3287 ........................................................................................... 6

N.Y. Gen. Bus. Law § 349 ..................................................................................... 6

N.Y. Gen. Bus. Law § 350-e .................................................................................. 6

## I.        Preliminary Statement

Over the past year, Plaintiffs Vozzolo, Winograd, and Piercy have litigated putative class actions against Defendant Air Canada arising from the airline's refusal to refund fares paid for flights it cancelled beginning in the spring of 2020 due to COVID-19.  *See Vozzolo,* ECF No. 1, 20-cv-3503 (PMH); *Abskharon,* ECF No. 37, 20-cv-11037 (PMH); *Piercy,* ECF No. 1, 20-cv-4988 (PMH).    Now, in an abrupt reversal of course occasioned by an agreement with the Canadian government that provided the airline with over $5 billion in financial assistance, Air Canada has implemented a "'Covid-19 Goodwill Period' change in policy to invite customers to request a refund for all tickets cancelled for any reason prior to April 13, 2021".  *See Vozzolo,* ECF No. 38. Air Canada argues this new offer moots the claims of Plaintiffs and the putative class.  Indeed, it has informed this Court that its refund offer "will leave plaintiffs. . .  and the putative class of members they seek to represent *without a claim.*"  *See Vozzolo,* ECF No. 38 at 2 (emphasis added). In other words, Air Canada argues its new refund policy serves as an ***effective release*** of claims, allowing it to retain the money passengers paid for useless tickets for over a year with complete impunity.  Air Canada acts as if the air fares Plaintiffs and the putative class paid it more than a year ago for no service was a gratuitous interest-free loan Plaintiffs and the putative class gave to Air Canada from which it should be permitted to retain its ill-gotten profits and deprive Plaintiffs and the putative class of any claim for statutory or exemplary damages, disgorgement of profits, the time value of money or interest, since Air Canada is now offering to return the air fare a year later, the very claims these class actions seek to recover.

In communicating its "Covid-19 Goodwill Period" refund offer to putative class members, Air Canada fails to disclose: (1) the pendency of this class action seeking recovery of losses for putative class members over and above the air fare offers to refund; or (2) that Air Canada intends to treat putative class members' acceptance of a refund of the air fare as an effective release of any

and all other claims members may have for Air Canada wrongfully withholding those monies over the past year.

Air Canada cannot be permitted to goad unsuspecting putative class members into effectively releasing claims based on such misleading communications. Indeed, such communications are inherently misleading to putative class members and are precisely the type of communications to putative class members the Supreme Court in *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100 (1981) envisioned a court would need to order corrective notice to avoid prejudice to the members of the putative class.

The communications at issue were emails Air Canada sent to putative class members purportedly advising them of the refund offer, copies of which Air Canada provided to Plaintiffs' counsel on May 10, 2021, pursuant to your Honor's instruction, *see Vozzolo,* ECF No. 41, and attached as Exhibits A, B, and C to the Declaration of Joseph N. Kravec, Jr, filed herewith. Despite its position that accepting the refund offer will effectively release, moot and otherwise vitiate class members' claims, Air Canada's emailed notices to putative class members about the offer contain *no* reference to these lawsuits and *no* explanation of the refund's potential impact on their legal rights or remedies. Since Air Canada is professing to obtain an effective release from putative class members by virtue of its new policy, failing to inform putative class members of these pending class actions or the potential consequences of accepting its offer is "particularly injurious" to class members because it runs the risk that class members will *unknowingly* give up their rights. *Id.* Specifically, "New York authority suggests" that where a plaintiff accepted a late payment and without reserving its right to collect interest, it loses the right to claim interest. *N. River Ins. Co. v. ACE Am. Reinsurance Co.,* 361 F.3d 134, 144 (2d Cir. 2004). While Plaintiffs will argue such authority is controlling in these circumstances, there is nonetheless a real possibility that a Court accepts Air Canada's mootness and effective release argument, which risk putative class members

2

must be informed of when deciding to accept Air Canada's 'Covid-19 Goodwill Period' refund offer.

In these circumstances, the Court has the duty and authority to require Air Canada to issue corrective notice.  Indeed, the Supreme Court recognized in *Gulf Oil,* 452 U.S. at 100  "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties" with respect to communications with putative class members.  As discussed *infra*, Courts in this district have exercised that authority to protect absent class members from "misleading" communications from defendants, including those communications which, just as Air Canada's notices do here, "by *omitting* critical information . . . threaten the choice of remedies available to class members".  *In re Currency Conversion Fee Antitrust Litig.,* 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005), *see also  Erhardt v. Prudential Group,* 629 F.2d 843, 846 (2d Cir. 1980)).

Putative class members deserve notice that Air Canada claims all of their legal claims will be extinguished if they choose to accept the refund offer.  Pursuant to Rule 2.C of Your Honor's Individual Practices in Civil Litigation, Plaintiffs did not write a pre-conference letter to the Court in advance of this motion because, as discussed *infra*, delay could result in a loss of putative class members' rights each and every day as the refund offer is on-going through June 12, 2021.

## II.    Legal Standard and Burden of Proof

As noted above, the Supreme Court advised in *Gulf Oil Co.,* 452 U.S. at 100, "because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties" with respect to communications with putative class members.  *See also, e.g., In re Initial Pub. Offering Sec. Litig.,* 499 F. Supp. 2d 415, 418 (S.D.N.Y. 2007) ("District courts have broad authority to supervise class actions" under Federal Rule of Civil Procedure 23(d), which "provides

3

that the court may issue appropriate orders . . . requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action"). "[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties[.]" *Gulf Oil,* 452 U.S. at 101.

"A court must take steps to further the policies embodied in Rule 23. One policy of Rule 23 is the protection of class members from 'misleading communications from the parties or their counsel.'" *In re Currency Conversion Fee Antitrust Litig.,* 361 F. Supp. 2d at 252 (*quoting Erhardt,* 629 F.2d at 846). "That same policy concern applies where a party misleads class members *by omitting critical information from its communications*. Communications *that threaten the choice of remedies* available to class members are subject to a district court's supervision." *Id.* (emphases added). As another court has explained, "a communication may be coercive where the defendant interferes with participation by potential class members in the lawsuit or misleads them *by failing to reveal how some proposed transaction might affect their rights in the litigation*." *Zamboni v. Pepe W. 48th St. LLC,* 2013 U.S. Dist. LEXIS 34201, at *10 (S.D.N.Y. Mar. 12, 2013). *See also Hinds Cty. v. Wachovia Bank N.A.,* 790 F. Supp. 2d 125, 134 (S.D.N.Y. 2011) ("the Court's duty and authority under Rule 23(d) to protect the integrity of the potential class and the administration of justice, is not limited only to those communications that mislead or otherwise threaten to create confusion and to influence the threshold decision whether to remain in the class.").

"*Gulf Oil*, and a court's power to restrict communications between parties and potential class members, apply even before a class is certified." *Ralph Oldsmobile, Inc. v. GMC,* 99 Civ. 4567 (AGS), 2001 U.S. Dist. LEXIS 13893, at *5 (S.D.N.Y. Sep. 7, 2001). "Whether a

communication is misleading or coercive—and therefore warrants judicial intervention—often depends not on one particular assertion, but rather the overall message or impression left by the communication" and "[a] court therefore must examine the context in which the communications were made and the effect of the communications' in determining whether, and how much, communication should be restricted." *O'Conner v. Agilant Sols., Inc.,* 444 F. Supp. 3d 593, 601 (S.D.N.Y. 2020) (*quoting Agerbrink v. Model Serv. LLC,* No. 14 CIV. 7841 JPO JCF, 2015 U.S. Dist. LEXIS 145563, at *3 (S.D.N.Y. Oct. 27, 2015)). "The Court's primary purpose in supervising communications is thus to ensure that potential class members receive accurate and impartial information regarding the status, purposes and effects of the class action." *Hinds.,* 790 F. Supp. 2d at 134.

Here, because the undisputed content of Air Canada's refund offer communications are before the Court at Exhibits A, B, and C, "an evidentiary hearing is not required." *Agerbrink*, 2015 U.S. Dist. LEXIS 145563, at *34. As discussed below, Plaintiffs clearly satisfy their burden of proving that corrective notice is required. *See Wu v. Pearson Educ. Inc.,* 2011 U.S. Dist. LEXIS 60881, at *20 (S.D.N.Y. June 7, 2011).

**III.    In Light of Air Canada's Argument That Its Refund Offer Will Effect a Waiver of Claims, Its Notices May Cause Class Members to Unknowingly Forfeit Legal Rights and Remedies**

As discussed above, Air Canada has unambiguously argued to the Court that its refund offer leaves Plaintiffs *and* putative class members "without a claim," thereby mooting these cases. *See Vozzolo,* ECF No. 38 at 2. Thus, Defendant takes the position that its refund offer will deprive all class members of the ability to litigate any of the claims raised in the case or recover any damages potentially available under those respective theories, arguing in essence that its refund offer will operate to effectively release *all* claims arising from its failure to timely pay refunds for flights that it cancelled. *See id.*

Air Canada fails to recognize that Plaintiffs have made claims for damages beyond the face value of the tickets themselves. *First*, Plaintiffs Vozzolo and Piercy have brought claims under N.Y. General Business Law Section 349 and 350 which permit statutory damages collectively of $550.00 and in the case of a "willful" or "knowing" violation, an award of up three times class members' actual damages "up to one thousand dollars" in the case of Section 349 or "ten thousand dollars" in the case of Section 350, along with attorneys' fees and costs. *See* N.Y. Gen. Bus. Law § 349 and §350-e.

*Second*, Plaintiff Winograd has brought claims under California Consumer Legal Remedies Act, which likewise permits the recovery of restitution, punitive damages, and attorneys' fees and costs. Cal. Civ. Code § 1780.

*Third*, all Plaintiffs have brought common law claims for unjust enrichment, which permits the recovery of Air Canada's "net profits enjoyed as a result of its misconduct," i.e., the time value of the money the airline wrongfully retained. *See Capstone Logistics Holdings, Inc. v. Navarrete,* No. 17-CV-4819 (GBD) (BCM), 2018 U.S. Dist. LEXIS 217876, at *17 (S.D.N.Y. Dec. 13, 2018). *See also Donati v. Shaffer,* 83 N.Y.2d 828, 830, 611 N.Y.S.2d 495, 496, 633 N.E.2d 1099, 1100 (1994) ("Interest on wrongfully obtained commissions is not an award separate from restitution but, rather, represents the present economic value of the restitution itself."). Courts have recognized that the lost "time value of money" is actionable. *See Porsch v. LLR, Inc.,* 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019) ("temporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing").

*Fourth*, all Plaintiffs have brought contract claims, which generally permit the recovery of prejudgment interest in the case of an award of damages. *See, e.g. Rhodes v. Davis,* 628 F. App'x 787, 792 (2d Cir. 2015) ("Interest is generally mandatory upon a sum awarded because of a breach of performance of a contract" under New York law) (citing N.Y. C.P.L.R. § 5001); *see also* Cal.

Civ. Code § 3287 (same).   Nevertheless, Plaintiffs have ascertained that acceptance of Air Canada's refund offer runs the real risk that putative class members will lose their rights to recover that interest.   For example, as the Second Circuit Court of Appeals has recognized, "New York authority suggests" that when a defendant makes payment of the claimed principal before judgment, the plaintiff's right to pre-judgment interest in a successful breach of contract action is lost *unless* "the claimant reserves its right to the interest upon receiving the payment."   *N. River Ins. Co.,* 361 F.3d at 144.   *See also TIG Ins. Co. v. Newmont Mining Corp.,* 2005 U.S. Dist. LEXIS 22410, at *13 (S.D.N.Y. Oct. 3, 2005).   While New York law appears to require a plaintiff to *affirmatively* assert her right to claim interest on the delayed refund, other state court decisions suggest that acceptance of the refund could foreclose the recipient from recovering interest altogether.   *See Bank One, N.A. v. United States Fid. & Guar. Co.,* 869 F. Supp. 426, 429 (S.D. W. Va. 1994) (under West Virginia law, by accepting settlement on the principal amount claimed, even with a reservation of rights clause, the plaintiff effectively discharged its claim for interest); *Davis v. Harrington,* 160 Mass. 278, 279-80, 35 N.E. 771, 772 (1894) (where Massachusetts Supreme Court held that where "after suit brought, the plaintiff accepted payment of his debt, not including a sum to which he was entitled as interest by way of damages for delay in payment," in the absence of "a contract to pay interest . . . if the debt is paid, there can be no recovery afterward for the interest which might have been collected.  . . .  It makes no difference that the payment was after suit brought.").   That class members will be unaware of this case law and risk losing their right to interest on breach of contract claims is another reason that Air Canada's notices are potentially coercive.

Air Canada, however, has made clear its position that all of these claims and attendant damages remedies are extinguished and effectively waived by its refund offer.   And its mootness argument apparently extends to consequential damages beyond the fares themselves, which are

not sought in these cases but nevertheless available to absent class members in individual breach of contract suits, which here could include damages incurred by passengers who, deprived of their rightfully owed refunds, suffered additional financial loss as a result.  *See Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.,* 2008 NY Slip Op 1418, ¶ 3, 10 N.Y.3d 187, 192, 856 N.Y.S.2d 505, 508, 886 N.E.2d 127, 130.  ("It is well settled that in breach of contract actions the nonbreaching party may recover general damages which are the natural and probable consequence of the breach.") (citations omitted).

Whether Air Canada's argument will carry the day remains to be seen.  The relevant point at this stage is that Air Canada has not told putative class members who receive Air Canada's email notices what is at stake for their legal rights if they accept the refund offered.  The vast majority of putative class members are undoubtedly unaware that any claims have been made on their behalf at all, or that claims for losses exceeding the air fare have been asserted on their behalf, as no class has been certified or class notice provided.  Air Canada's refund communication not only fails to inform them of these cases or the claims made by Plaintiffs, *see* Exhibits A, B, and C, but as discussed above, Air Canada has presented the new refund offer as arising *solely* from its "goodwill."  Thus, putative class members who receive the communication will be unable to make an informed decision as to whether to accept that refund in light of the possibility that doing so will extinguish *all* of their legal claims, as Air Canada argues, or at the very least, as detailed above in footnote 1, obviate their claims for prejudgment interest.  As a result, without corrective notice, many putative class members may be found to have unknowingly waived or released their claims.  As discussed below, in circumstances such as these, courts routinely intervene to require defendants to issue corrective notice to class members so that they can make an informed decision about whether to accept an offer from a defendant that might effectively release some or all of their claims.

8

IV.     **The Court Should Order Air Canada to Issue a Corrective Notice to Class Members**

Numerous courts **in this district** have exercised their authority under Rule 23 and *Gulf Oil* to remedy defendants' unilateral communications with absent class members which omit critical information, just as Air Canada's communications do here, that could result in class members unwittingly forfeiting legal rights, particularly where, as here, the recipient is financially dependent upon the defendant.

For example, in *Ralph Oldsmobile*, the plaintiff brought a class action on behalf of similarly situated franchised GM dealer against the automaker, alleging it failed to properly reimburse warranty repairs.  GM subsequently offered dealers a release which could have waived or limited their rights in the class case but did not communicate the existence of the case to the dealers.  *See* 2001 U.S. Dist. LEXIS 13893, at *1-4.  Judge Schwartz held that "a finding of potential coercion is warranted" despite the fact that "there is no evidence of *actual coercion*" since "the potential class members depend upon the defendant for information, supplies, and credit" and many dealers' "continued success and, indeed, existence may depend upon GM's good will."  2001 U.S. Dist. LEXIS 13893, at *11-12.  Judge Schwartz likewise held "[t]he record also warrants a finding of a potential for unknowing waivers resulting from a lack of information" since "the release does not mention this action[, n]or does the record reflect any mention of this action in any other communications made to date by GM. . . *There is thus a risk that dealers may sign the release without knowing what they are releasing. Such an unknowing release would be abusive and warrant relief.  Id.* at *12 (emphasis added).  To address these problems, the *Ralph Oldsmobile* court ordered notice to be sent, at GM's expense, to potential members of the putative class, providing them with information regarding which dealers may be in the class if a class is certified, the status of the action, how a dealer may obtain more information about the case or contact plaintiff's counsel, and stating that signing the release may prevent a dealer from recovering

damages in this action; the court also held that any potential member of the putative class who had already signed a release be afforded an opportunity to apply to the court to have that release voided. *Id.* at \*15-16, 21.

Similarly, in *In re Currency Conversion*, defendant banks which had issued credit cards to putative class members in a class action added arbitration clauses to their cardholder agreements during the pendency of the litigation and alerted cardholders of the same by sending "Change in Terms" notices which informed cardholders that they were agreeing that credit card disputes would be subject to arbitration and that they would forfeit their rights to bring a civil suit; importantly, the notices did *not* alert class members of the pendency of the ongoing civil suits already brought. *See* 361 F. Supp. 2d at 249.  Recognizing that "[a] unilateral communications scheme . . .  is rife with potential for coercion," Judge Pauley held that the policies underlying Rule 23 rendered the arbitration clause unenforceable, noting that "in light of the cardholders' dependence on defendants for their future credit needs and information, this Court finds that Chase's and Citibank's actions are potentially coercive and improper," s*ee id.* at 253, and concluding that "defendants' unsupervised communications were improper because they sought to eliminate putative class members' rights in this litigation."  *See id.* at 254.

More recently, in *O'Conner*, Judge Wood held that arbitration agreements provided by a defendant company to its employees could not be enforced to preclude putative collective class members from participating in a Fair Labor Standards Act action when "[t]he Arbitration Agreement did not disclose that by signing the Arbitration Agreements, putative plaintiffs would lose their right to participate in this lawsuit. . . [a]nd ASI management asked [recipients] to return the Arbitration Agreements within two business days of when they were sent to employees."  444 F. Supp. 3d at 603.  Much as the *Ralph Oldsmobile* court held that "actual coercion" need not be shown to merit judicial intervention, *O'Conner* recognized that while "evidence also suggests that

10

ASI management instituted the new policy in bad faith . . . *the Court need not (and does not) make a factual finding on this issue.*" *Id.* (emphasis added).  In addition to finding the arbitration agreement unenforceable, the *O'Conner* court ordered a corrective notice be sent advising putative plaintiffs of their right to join the litigation.  444 F. Supp. 3d at 606.

The principles recognized in these cases demonstrate that the circumstances here merit sending a corrective notice.  First, the relationship between absent class members and Air Canada is the sort that inherently renders the airline's unilateral communication potentially coercive, even if there is no *actual* coercion or bad faith on the part of Air Canada in communicating its new refund policy.  Putative class members who receive Air Canada's refund offer, believing themselves to be beneficiaries of the airline's "goodwill" and undoubtedly eager to take advantage of it, are highly unlikely to affirmatively investigate whether they are effectively giving up legal rights by doing so.  This is particularly true given the relatively short timeframe to make their refund request.  Therefore, whether intentional or not, Air Canada's communication is potentially coercive, and corrective notice is merited.  *See O'Connor,* 444 F. Supp. 3d at 601, 603 ("Whether a communication is misleading or coercive—and therefore warrants judicial intervention—often depends not on one particular assertion, but rather the overall message or impression left by the communication;" the court need not make a finding that defendant acted in bad faith for a communication to be impermissibly coercive).  *See also Hinds,* 790 F. Supp. 2d at 135 ("[h]owever pure the intentions of the [communicating party] may be, the Court must ensure that potential class members receive notice . . . that conveys objective, neutral information about" the litigation); *Zamboni,* 2013 U.S. Dist. LEXIS 34201, at *9 (recognizing that "communications may be deemed inherently coercive" where there "is an ongoing and unequal business or employment relationship between the parties").

11

Second, while this case does not involve a formal release, the result may well be the same as if it had; Air Canada has taken the position that its refund communication effectively causes putative class members to forfeit all claims raised and damages sought in these cases, as Air Canada argues, or at the very least, result in the waiver of their contractual right to interest upon receiving their refund. *See* FN1, *supra*. Despite this, the refund communication makes no mention of these possibilities, or of this litigation at all. Thus, as a practical matter, this case presents exactly the same risk of the "unknowing waiver" of right that courts have found to merit judicial intervention. *See Ralph Oldsmobile,* 2001 U.S. Dist. LEXIS 13893, at *12 ("*an unknowing release would be abusive and warrant relief*") (emphasis added); *In re Currency Conversion,* 361 F. Supp. 2d at 252 (a party may impermissibly mislead class members "*by omitting critical information from its communications*. Communications *that threaten the choice of remedies* available to class members are subject to a district court's supervision") (emphases added).

In sum, inasmuch as Air Canada's refund offer purports to put putative class members to a Hobson's choice of taking a refund of the face value of the ticket and waiving all rights or refusing the refund with the hope of later recovering the full measure of their available damages, that class members ought to at least be able to make an *informed* decision when so deciding. *Cf. United States v. Consol. Edison Co.,* 590 F. Supp. 266, 270 (S.D.N.Y. 1984).

Finally, it bears noting that Plaintiffs do not seek to preclude Air Canada from communicating its refund offer, and very little is required to cure its first round of communications. *See Gulf Oil,* 452 U.S. at 102 (noting that the court's weighing of a need for a limit on unilateral communication "should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances."). Air Canada can easily address the problems created by the first notice by sending a second round of email notices that (i) informs recipients that those actions are pending, and that the recipients may be putative class members in

12

them, (ii) provide contact information for Plaintiff's counsel, and (iii) explain that they may be affecting their rights in the cases by accepting the refund. *See Ralph Oldsmobile,* 2001 U.S. Dist. LEXIS 13893, at *12.

## V.     Conclusion

For the foregoing reasons, the Court should grant Plaintiffs' Motion for an Order Directing Air Canada to Issue Corrective Notice to Putative Class Members.

DATED:  May 24, 2021

**FEINSTEIN DOYLE PAYNE**
 **& KRAVEC, LLC**

By:  *s/Joseph N. Kravec, Jr.*
        Joseph N. Kravec, Jr.

29 Broadway, 24th Floor
New York, NY 10006-3205
Telephone: (212) 952-0014
Email: jkravec@fdpklaw.com

 and

429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007

SQUITIERI & FEARON, LLP


By: *s/ Stephen J. Fearon, Jr.*
        Stephen J. Fearon, Jr.

32 East 57th Street, 12th Floor
New York, New York 10022
Telephone: (212) 421-6492
Email: stephen@sfclasslaw.com

**VOZZOLO LLC**


By:  *s/Antonio Vozzolo*
        Antonio Vozzolo

345 Route 17 South
Upper Saddle River, New Jersey 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com

*Counsel for Plaintiff and the Proposed Class*

TO:    Sarah G. Passeri
           Christopher G. Kelly
           31 West 52nd Street
           New York, New York 10019
           Telephone:  (212) 513-3200
           Email:  sarah.passeri@hklaw.com
                     christopher.kelly@hklaw.com

*Attorney for Defendant Air Canada*