**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EMILIO L. VOZZOLO, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AIR CANADA,<br><br>Defendant. | Civil Action No.:  7-20-cv-03503 (PMH) |
| THOMAS PIERCY, on behalf of himself and al others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AIR CANADA,<br>Defendant. | Civil Action No.:  1:20-cv-04988 (PMH) |
| NIKKI M. ABSKARON, PETER A. ABSKARON, and BARRY WINOGRAD, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>AIR CANADA,<br><br>Defendant. | Civil Action No.:  7-20-cv-11037 (PMH) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION FOR AN ORDER GRANTING A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

I.      Preliminary Statement.................................................................................................1

II.     Legal Standard and Burden of Proof ...................................................................4

III.    Argument ..................................................................................................................5

      A.      Under clear Second Circuit precedent, Plaintiffs would suffer irreparable harm absent an injunction requiring Air Canada to set aside the requested funds. ..........5

      B.      Plaintiffs have demonstrated a sufficient likelihood of success on the merits of their claim to fees, or at a minimum, serious questions going to the merits ...................6

IV.     Conclusion .............................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Absolute Recovery Hedge Fund, L.P. v. Gaylord Container Corp.*,
    185 F. Supp. 2d 381 (S.D.N.Y. 2002) ................................................................. 7, 8

*Blau v. Rayette-Faberge, Inc.*,
    389 F.2d 469 (2d Cir. 1968) .............................................................................. 4

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ......................................................................................... 1

*Brautigam v. Bratt, 98 Civ. 9060*
    e.g..  (JSM), 2000 U.S. Dist. LEXIS 12774 (S.D.N.Y. Sep. 1, 2000) ............................ 2, 4, 5

*Central R.R. & Banking Co. v. Petus*,
    113 U.S. 116 (1885) ......................................................................................... 1, 2

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
    386 U.S. 714 (1967) ......................................................................................... 1

*Green Party v. N.Y. State Bd. of Elections*,
    389 F.3d 411 (2d Cir. 2004) .............................................................................. 4

*In re Agent Orange Prod. Liability Litigation*,
    818 F.2d 216 (2d Cir. 1987) .............................................................................. 2

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................ 3

*Kamerling v. Massanari*,
    295 F.3d 206 (2d Cir. 2002) .............................................................................. 5

*Kickham Hanley P.C. v. Kodak Ret. Income Plan*,
    558 F.3d 204 (2d Cir. 2009) .............................................................................. 5, 7

*Kickham Hanley, P.C. v. Kodak Ret. Income Plan*,
    574 F. Supp. 2d 314 (W.D.N.Y. 2008) ............................................................. 7, 11

*Klein v. Qlik Techs., Inc.*,
    906 F.3d 215 (2d Cir. 2018) .............................................................................. 1

*Kopet v. Esquire Realty Co.*,
    523 F.2d 1005 (2d Cir. 1975) ........................................................................... 4

*Koppel v. Wien*,
    743 F.2d 129 (2d Cir. 1984) .............................................................................. 4

*Porter v. Lee*,
    328 U.S. 246 (1946) ......................................................................................... 11

*Rodriguez by Rodriguez v. DeBuono*,
    175 F.3d 227 (2d Cir. 1998) ............................................................... 5

*Savoie v. Merchs. Bank*,
    84 F.3d 52 (2d Cir. 1996) ............................................................. *passim*

*Symington Wayne Corp. v. Dresser Industries, Inc.*,
    383 F.2d 840 (2d Cir. 1967) ............................................................ 11

**Statutes**

9 U.S.C. § 41713(b)(1) ........................................................................ 1

29 U.S.C. § 1056(d)(1) ........................................................................ 7

## I.      Preliminary Statement

Plaintiffs Vozzolo, Winograd, and Piercy have spent the past year litigating putative class actions against Defendant Air Canada arising from the airline's refusal to refund fares paid by U.S. passengers for flights it cancelled beginning in the spring of 2020 due to the COVID-19 pandemic. *See Vozzolo,* ECF No. 1, 20-cv-3503 (PMH); *Abskharon,* ECF No. 37, 20-cv-11037 (PMH); *Piercy,* ECF No. 1, 20-cv-4988 (PMH).   As the Court is aware, Defendant has taken the position that Air Canada "did not breach its agreement with Plaintiff[s]" and that Plaintiffs claims are expressly preempted by the Airline Deregulation Act of 1978, 9 U.S.C. § 41713(b)(1).  *See e.g.,* ECF No. 22 at 2,7.  While discovery in these cases was underway, however, Air Canada reversed course and implemented a "'Covid-19 Goodwill Period' change in policy to invite customers to request a refund for all tickets cancelled for any reason prior to April 13, 2021".  *See Vozzolo,* ECF No. 38.  Air Canada argues this its "new refund policies have rendered Plaintiff's action moot." *See Vozzolo,* ECF No. 38 at 2 (emphasis added).

While Plaintiffs have argued the case should not be mooted by the refunds (*see Vozzolo,* ECF No. 39), whether the case has been mooted by the refunds is "a jurisdictional question" that the Court ultimately will have to resolve.  *See Klein v. Qlik Techs., Inc.,* 906 F.3d 215, 218 (2d Cir. 2018).  Should the Court agree that these cases are moot—as Your Honor indicated that it was likely he would at the April 29, 2021 conference—then under established Second Circuit precedent Plaintiffs may be entitled to recover attorneys' fees and costs from the refund payments made to putative class members.[1]  In *Savoie v. Merchs. Bank,* 84 F.3d 52, 54 (2d Cir. 1996), the Court of

---

[1] Generally, under the "American Rule", absent either a statutory or contractual provision for the award of fees or an exception to the rule, litigants bear their own attorneys' fees. *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 714 (1967). However, an exception to this general rule arises in cases involving the creation of a common fund in class actions. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Central R.R. & Banking Co. v. Petus*, 113 U.S. 116

Appeals held that where a defendant in absence of a judgment or order undertakes to provide compensation to a group of people, the plaintiff may be deemed to have recovered a common fund for the benefit of himself and others not named in the suit and may recover attorney's fees and costs from the fund itself or directly from the other parties enjoying the benefit, even if plaintiff did not win his lawsuit, as long as the suit has become moot because the relief sought is otherwise obtained and the suit was the substantial cause of the benefit obtained.  *See also, e.g.. Brautigam v. Bratt,* 98 Civ. 9060 (JSM), 2000 U.S. Dist. LEXIS 12774, at *3-4 (S.D.N.Y. Sep. 1, 2000).

Critically, a plaintiff cannot sit on his hands if he is on notice that the common fund in question is actively being distributed to beneficiaries, just as Air Canada's refunds are here.   In such a case, the Second Circuit instructs that "plaintiffs should seek a preliminary injunction to set aside a portion of the common fund, in order to ensure the availability of common fund monies pending a determination by a court as to whether a fee award is warranted." *Savoie*, 84 F.3d 52; *Brautigam*, 2000 U.S. Dist. LEXIS 12774 at *6 (same).

On June 28, 2021, Plaintiffs served limited written discovery upon Air Canada targeted to the question of whether these lawsuits were the "substantial cause" of the airlines' change to its refund policy, and Plaintiffs intend to take one or more depositions from Air Canada's decision-makers in order to make an appropriate motion for attorneys' fees and costs on a well-developed factual record.[2]  While the answer to this question is far from clear now, as instructed by *Savoie*,

_____

(1885).  The rationale for this "common benefit" or "common fund" exception is the belief that an attorney who creates a fund for the benefit of a class should receive reasonable compensation from the fund for his efforts. *Central R.R.*, 113 U.S. at 125; *In re Agent Orange Prod. Liability Litigation*, 818 F.2d 216, 222 (2d Cir. 1987).

[2] As the Court is aware, the parties currently dispute whether discovery in this matter is stayed, as Air Canada believes, or not, as Plaintiffs understand from this Court's April 30, 2021 order at *Vozzolo*, ECF No. 40.  *See Vozzolo*, ECF Nos 46 and 49.  The Court has set that dispute for a pre-motion conference for July 12, 2021.  *See Vozzolo*, ECF No. 50.

Plaintiffs bring this motion for a preliminary injunction in order to preserve Plaintiffs' ability to make a claim for attorneys' fees by requiring Air Canada to place into escrow 30%[3] of any yet to be paid refunds[4] to putative class members pending a determination of whether the claims of the class are mooted and if so, whether Plaintiffs' lawsuits were a substantial cause of the refund policy change.

      As shown below, a preliminary injunction is fully merited under *Savoie* and applicable law. As an initial matter, the Second Circuit recognizes that if Plaintiffs are unable to maintain the *status quo* by enjoining Air Canada from disbursing funds from which they would be entitled to recover attorneys' fees, they will be "irreparably harmed." Second, based on the limited evidence available, Plaintiffs can establish a *prima facie* case that their suits were a "substantial cause" of Air Canada's refund policy change, and thus that they have a sufficient likelihood of success on the merits of a future claim for attorneys' fees if the Court ultimately determines that Plaintiffs' claims are mooted. Moreover, the balance of hardships tips in favor of Plaintiffs, who will be left without any recourse if the injunction is denied.

      Pursuant to Rule 2.C of Your Honor's Individual Practices in Civil Litigation, Plaintiffs did not write a pre-conference letter to the Court in advance of this motion because delay could result in the loss of their right to obtain attorneys' fees and costs, and thus the pre-motion conference letter requirement does not apply.

---

[3] *See In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 587, n. 8 (S.D.N.Y. 2008) (recognizing that 30% of monetary settlement is generally a fair and reasonable attorney fee award in a common fund case in the Second Circuit and elsewhere).

[4] As used herein, "refunds" shall include both cash and vouchers payable under Air Canada's "'Covid-19 Goodwill Period' change in refund policy.

II.    **Legal Standard and Burden of Proof**

"A party recovering a fund for the benefit of others, in addition to himself, may recover his costs, including his attorney's fees, from the fund itself or directly from the other parties enjoying the benefit." *Savoie*, 84 F.3d at 56.  "In order to receive an award of attorney's fees under the common fund doctrine, the plaintiff need not have won his lawsuit; 'fees may be awarded even when there is no judgment on the merits or when the dispute has become moot because the relief sought is otherwise obtained.'" *Id.* (*citing Koppel v. Wien,* 743 F.2d 129, 135 (2d Cir. 1984); *Blau v. Rayette-Faberge, Inc.,* 389 F.2d 469, 474 (2d Cir. 1968); *Kopet v. Esquire Realty Co.,* 523 F.2d 1005, 1008-09 (2d Cir. 1975)).  *See also Brautigam,* 2000 U.S. Dist. LEXIS 12774, at *3-4.

Where a dispute has become moot by the defendant's actions in providing compensation to the group of affected persons, the district court must determine whether plaintiff's suit was a substantial cause of the benefit obtained, and the defendant bears the burden of proof to establish the absence of a causal connection between the lawsuit and the defendant's action. *Savoie,* 84 F.3d at 56-57; *See also Brautigam*, 2000 U.S. Dist. LEXIS 12774, at *3-4.  Notably, the Second Circuit does *not* require a plaintiff to show that his complaint has sufficient merit to survive a motion to dismiss before awarding fees in a mooted case. *Savoie,* 84 F.3d at 57.

Accordingly, in such cases, the Second Circuit instructs that "where a defendant intends to distribute the entirety of what is arguably a common fund, plaintiffs should seek a preliminary injunction to set aside a portion of the common fund, in order to ensure the availability of common fund monies pending a determination by a court as to whether a fee award is warranted." *Id.* at 58.  To obtain a preliminary injunction the moving party must show, first, irreparable injury, and, second, either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships decidedly tipped in the movant's favor. *Green Party v. N.Y.*

*State Bd. of Elections,* 389 F.3d 411, 418 (2d Cir. 2004).  Plaintiffs can establish these requisites here as shown in the Argument below.

**III.    Argument**

> **A. Under clear Second Circuit precedent, Plaintiffs would suffer irreparable harm absent an injunction requiring Air Canada to set aside the requested funds.**

In order to establish irreparable harm the movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.  *See, e.g. Rodriguez by Rodriguez v. DeBuono,* 175 F.3d 227, 234 (2d Cir. 1998).   The finding of irreparable harm "is perhaps the single most important prerequisite for the issuance of a preliminary injunction."  *Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir. 2002).

Here, if Air Canada does not set aside funds, then the common fund will cease to exist, leaving Plaintiffs without recourse against the airline under the common fund doctrine.  *See Savoie,* 84 F.3d at 56 ("The common fund doctrine does not apply, however, when fees are sought from the assets of the losing party, and the fee award would not come from a common fund nor be assessed against persons who have derived benefit from the lawsuit.").  *See also Brautigam,* 2000 U.S. Dist. LEXIS 12774, at *5 (S.D.N.Y. Sep. 1, 2000) (plaintiff could not recover from assets of defendant or from fund that was distributed and no longer exists).

The Second Circuit has recognized that this constitutes irreparable harm because "[i]f plaintiffs were subsequently awarded attorney's fees but a portion of the common fund had not been set aside, plaintiffs would have had to attempt to seek recovery from each of the" benefitting class members, an alternative which is "so impractical as to be infeasible, and constitutes irreparable harm." *See Savoie,* 84 F.3d at 58. *See also Kickham Hanley P.C. v. Kodak Ret. Income Plan,* 558 F.3d 204, 209 (2d Cir. 2009) (same).   Accordingly, the Second Circuit instructed plaintiffs that **"where a defendant intends to distribute the entirety of what is arguably a**

common fund, plaintiffs should seek a preliminary injunction to set aside a portion of the **common fund, in order to ensure the availability of common fund monies pending a determination by a court as to whether a fee award is warranted.**" *Id.* at 58.  This is precisely what Plaintiffs are seeking to do by this Motion.

Thus, Plaintiffs have demonstrated that they will suffer irreparable harm absent an injunction.

### B.  Plaintiffs have demonstrated a sufficient likelihood of success on the merits of their claim to fees, or at a minimum, serious questions going to the merits.

The "likelihood of success" inquiry, in this context, is directed to the question of whether, assuming the Court finds that Air Canada's refund policy has mooted this case, Plaintiffs' suits were "the substantial cause of the benefit obtained".  *Savoie,* 84 F.3d at 57.

With respect to Air Canada's argument this its "new refund policies have rendered Plaintiff's action moot," *see Vozzolo,* ECF No. 38 at 2, this Court has suggested in the April 29, 2021 conference between the parties that it is inclined to rule in Air Canada's favor.  *See Vozzolo,* ECF No. 48-1 at 5-6 (noting "After June 15th [the original refund claim deadline], I'll know whether and to what extent this group has claims to be made still.  So that's the first factual issue I have.  And if there were two people left, there's no class action here. . . . But you're going to have some explaining to do to me if, for example, all of these people got reimbursed their refunds and all you wanted was interest.").  While Plaintiffs are aware that Your Honor was not prejudging any of the issues yet to be litigated, including the mootness issue raised by Air Canada, it does appear that there is a substantial likelihood Your Honor will deem Plaintiffs' case to have been mooted for those passengers who have received relief under Air Canada's "Covid-19 Goodwill Period" change in policy.

With respect to the merits of the causation argument, implicit in the Second Circuit's ruling in *Savoie* is the notion that Plaintiffs need not conclusively establish their entitlement to fees because they were the "substantial cause" of the refund policy at this stage, both because that issue must be determined after development of a full record in further proceedings *and* because Air Canada will bear the burden of establishing "the absence of a causal connection between the lawsuit and the defendant's action." *See Savoie,* 84 F.3d at 58 (plaintiffs should seek a preliminary injunction to set aside a portion of the common fund, in order to ensure the availability of common fund monies *pending a determination by a court as to whether a fee award is warranted*) (emphasis added).

This principle was recognized by the district court in *Kickham Hanley, P.C. v. Kodak Ret. Income Plan,* 574 F. Supp. 2d 314, 317 (W.D.N.Y. 2008), which found that where a plaintiff had established a likelihood of irreparable harm for the reasons Plaintiffs do here, a preliminary injunction should issue even where it "remains to be seen" whether a common fund was created and whether said fund was attributable to plaintiff's efforts since plaintiff had "presented significant questions going to the merits of its claims" and "the balance of hardships tips decidedly in plaintiff's favor[.]"[5]  Similarly, in *Absolute Recovery Hedge Fund, L.P. v. Gaylord Container Corp.,* 185 F. Supp. 2d 381, 387 (S.D.N.Y. 2002), the district court agreed that "it would be inappropriate for the Court definitively to resolve the causation issue" on a motion for preliminary injunction, but denied plaintiffs' motion when they "sought no discovery on [the causation] issue

---

[5] On appeal, *Kickham* was reversed on the grounds that a preliminary injunction was not proper because plaintiff's claim to attorney's fees drawn from undistributed vested pension benefits violated ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1), and thus plaintiff could not establish a "sufficient serious questions as to justify a preliminary injunction."  *Kickham Hanley P.C. v. Kodak Ret. Income Plan,* 558 F.3d 204, 206-07, 215 (2d Cir. 2009).  There is no such statutory barrier to Plaintiffs' claim for fees and thus the Second Circuit's ruling in *Kickham* does not undermine the logic of the district court with respect to the remainder of its *Savoie* analysis.

and no evidentiary hearing" after concluding that "there is no substantial conflict in the evidence"

as to causation and that under the unique circumstances of that case, the balance of hardships did

*not* tip in favor of the plaintiffs.

Unlike the *Absolute Recovery* plaintiffs, Plaintiffs here *do* seek discovery going to the

causation question so that the matter can be resolved on the basis of a full evidentiary record

following written discovery responses and one or more depositions.  Moreover, the evidence that

does exist suggests that Plaintiffs' suits *were* a substantial cause of the airline's new refund policy;

at a minimum, Plaintiffs have made a *prima facie* case that justifies the preservation of the *status*

*quo* pending an ultimate ruling.

**First**, Air Canada acknowledged the risks posed by these actions.  Specifically, in the

Company's First Quarter 2020 Management's Discussion and Analysis of Results of Operations

and Financial Condition (dated May 4, 2020), the Company acknowledged:[6]

> Air Canada may be required to refund non-refundable fares depending on the laws
> of the jurisdictions applicable to such flights. Not refunding non-refundable tickets
> may expose Air Canada to litigation, including class actions, as well as enforcement
> action by regulators in certain jurisdictions. Requirements are in flux as emergency
> legislation to dampen refund obligations is being considered in a number of
> jurisdictions, including in Europe. In countries where refund requirements are or
> will be maintained or enforced, ensuing refunds would impact Air Canada's
> liquidity and the impact of all these risks could be material.

**Second**, Defendant's new refund policy was intended for Canadians.  Plaintiffs initially

believed that the motivation behind Air Canada's new refund policy was its agreement with the

Canadian government that provided the airline with over $5 billion in financial assistance.  *See,*

*e.g..Vozzolo,* ECF No. 44 at 5.  That said, it has since become clear to Plaintiffs after further

---

[6] *See* Declaration of Joseph N. Kravec, Jr. ("Kravec Decl.") Exhibit A at p. 26, available at
https://www.aircanada.com/content/dam/aircanada/portal/documents/PDF/en/quarterly-
result/2020/2020_MDA_q1.pdf

investigation of statements made by Canadian government officials that the agreement with Canada likely did *not* impact the airline's decision to apply its new refund policy for the benefit of American customers, like Plaintiffs and those they seek to represent, insofar as the Canadian government's agreement with the airline appears to have rested only upon Air Canada's commitment to provide reimbursement for *Canadians*.

Specifically, in November 2020, then Canadian Transport Minister Marc Garneau stated, in connection with a statement concerning the possibility of government support for the airline industry that **"*Before we spend one penny of taxpayer money on airlines, we will ensure Canadians get their refunds*"** (emphasis added).[7]  At that time, Mr. Garneau acknowledged **"*there are class action lawsuits in the United States against Canadian airlines for failing to refund American passengers"*** and in that connection stated **"*I'll just say that, yes, there are class action suits against the airlines. I'm not going to comment on how the airlines will deal with those.*"** [8] More recently, Canadian Prime Minister Justin Trudeau mandated to the Canadian Minister of Transport on January 15, 2021 that one of his priorities was to **"*ensure Canadians get refunds for air travel cancelled due to the pandemic*"** (emphasis added).[9]  On April 12, 2021, the Canadian government announced the terms of the financing arrangement with Air Canada and said it

---

[7]    *See* Kravec Decl. Exhibit B at p. 4 of 14, available at https://globalnews.ca/news/7450410/canadian-airline-funding-garneau/

[8]*See* Kravec Decl. Exhibit C at pp. 9-10, available at https://www.ourcommons.ca/Content/Committee/432/TRAN/Evidence/EV10940593/TRANEV03-E.PDF at p. 10.

[9]  *See* Kravec Decl. Exhibit D at p. 3 of 5, available at https://pm.gc.ca/en/mandate-letters/2021/01/15/minister-transport-supplementary-mandate-letter

provides ***"Refunds for Canadians"***.[10]  Moreover, Air Canada itself does not attribute the financing

arrangement with Canadian government to its decision to provide refunds to U.S. passengers, but

rather contends the refunds are a "Covid-19 Goodwill Period".  *See Vozzolo,* ECF No. 38.  This

all suggests that something other than the financing arrangement with the Canadian government

caused Air Canada to extend refunds to U.S. passengers.  But even if discovery reveals the

financing arrangement with Canada somehow encompassed refunds to U.S. passengers who are

putative class members, it may well be that discovery would also reveal that Plaintiffs' suits were

also a substantial cause in any decision to include refunds to U.S. passengers in the arrangement.

Indeed, Plaintiffs' lawsuit need not be the sole cause for the refunds, just a substantial cause. This

strongly favors a preliminary injunction to maintain the *status quo* until such discovery can be

completed.

      **Lastly,** while the U.S. Department of Transportation Office of Aviation Consumer

Protection ("OACP"), filed a complaint and enforcement proceeding against Air Canada asserting

that Air Canada failed to provide timely refunds for flights to and from the United States that it

canceled or significantly changed, that complaint was filed on June 15, 2021, months *after* Air

Canada's new refund policy.[11]

      In other words, the absence of a well-developed record after full discovery providing

conclusive evidence for a *different* cause suggests that Plaintiffs' suits were a substantial

motivating factor in the airline's decision to refund would-be class members, or at least, provides

good grounds for Plaintiffs' request for a preliminary injunction to maintain the *status quo* so a

---

[10]*See* Kravec Decl. Exhibit E at p. 1 of 4, available at https://www.canada.ca/en/department-finance/news/2021/04/details-of-financial-support-to-air-canada.html

[11] *See* Kravec Decl. Exhibits F and G, available at https://www.regulations.gov/docket/DOT-OST-2021-0073/document

complete evidentiary record can be developed through discovery that will permit the Court to resolve the "serious questions" going to the issue of whether attorneys' fees and costs are warranted.  Moreover, to date in this litigation, Air Canada—which bears the burden of proof on the causation question—has not made any evidentiary showing as to the absence of a causal connection between the suits and its refund policy, instead offering only the implied explanation that the refunds are offered as a matter of its "goodwill."  Air Canada's proffered reason to date is simply not believable for a non-eleemosynary entity like Air Canada.

Furthermore, the balance of hardships here weights in favor of Plaintiffs.  As discussed, if the portions of the unpaid refunds are not set aside, Plaintiffs will be without recourse against Air Canada under a common fund theory, whereas the only burden upon Air Canada will be minor bookkeeping and accounting efforts.  *See Kickham,* 574 F. Supp. 2d at 317 (finding balance of hardships favored plaintiff and noting that while delay in payments to beneficiaries was "regrettable" such delay would be "justifiable" if they received benefits because of plaintiff's actions).[12]

---

[12] Plaintiffs note that if Air Canada now having received notice of our preliminary injunction motion and Plaintiffs' potential right to attorneys' fees and costs from the refunds not paid as of the date of this motion, but nonetheless goes ahead and pays these monies, then Air Canada will become responsible for attorneys' fees and costs that Plaintiffs would have been entitled to from those funds.  *Savoie*, 84 F. 3d at 58-59 ("where a defendant with notice in an injunction proceeding completes the acts sought to be enjoined the court may by mandatory injunction restore the *status quo*.") (*citing Porter v. Lee,* 328 U.S. 246, 251 (1946); *see Symington Wayne Corp. v. Dresser Industries, Inc.,* 383 F.2d 840, 842 (2d Cir. 1967)).

**IV.    Conclusion**

For the foregoing reasons, the Court should grant Plaintiffs' Motion for a Preliminary

Injunction.

DATED:  June 29, 2021

**FEINSTEIN DOYLE PAYNE**                                **VOZZOLO LLC**
**& KRAVEC, LLC**

By:  _s/Joseph N. Kravec, Jr._                              By:  _s/Antonio Vozzolo_
     Joseph N. Kravec, Jr.                                    Antonio Vozzolo

29 Broadway, 24th Floor                                    345 Route 17 South
New York, NY 10006-3205                                    Upper Saddle River, New Jersey 07458
Telephone: (212) 952-0014                                  Telephone: (201) 630-8820
Email: jkravec@fdpklaw.com                                 Facsimile: (201) 604-8400
                                                           Email: avozzolo@vozzolo.com

 and

429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007

SQUITIERI & FEARON, LLP


By: _s/ Stephen J. Fearon, Jr._
      Stephen J. Fearon, Jr.

32 East 57th Street, 12th Floor
New York, New York 10022
Telephone: (212) 421-6492
Email: stephen@sfclasslaw.com

*Counsel for Plaintiff and the Proposed Class*